# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Valley Container Company, Inc., Individually
And On Behalf of All Others Similarly
Situated,

       Plaintiffs,

   v.

Liberty Mutual Group, Inc.; Liberty Mutual
Insurance Company; Liberty Mutual Fire
Insurance Co,; Liberty Insurance Corporation;
LM Insurance Corporation; The First Liberty
Insurance Corporation; Liberty County Mutual
Insurance Company; Wausau General
Insurance Company; Wausau Underwriters
Insurance Company; Employers Insurance
Company of Wausau; Peerless Insurance
Company; collectively d/b/a Liberty Mutual
Insurance,

       Defendants.

**CLASS ACTION COMPLAINT**

(JURY TRIAL DEMAND)

## CLASS ACTION COMPLAINT

Plaintiff, through undersigned counsel, on behalf of itself and all others similarly situated,

makes the allegations herein regarding the Plaintiff on personal knowledge, and on investigation

and on information and belief regarding all other allegations.

## INTRODUCTION

1.     Defendants Liberty Mutual Group, Inc., and its associated Defendant "stock

companies," Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company,

Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance

Corporation, Liberty County Mutual Insurance Company, Wausau General Insurance Company,

Wausau Underwriters Insurance Company, Employers Insurance Company of Wausau, and

Peerless Insurance Company, all of which do business collectively as "Liberty Mutual Insurance" and/or "Liberty Mutual" (and are collectively referred to as such herein), have systematically, willfully, and unlawfully overcharged companies in at least 35 states for workers' compensation insurance, and have engaged in misconduct which has caused Liberty Mutual and other workers' compensation insurers in at least 35 states to overcharge companies for workers' compensation insurance. Liberty Mutual has purposefully and/or knowingly violated the rules, incorporated by contract and by law, governing workers' compensation insurance in the affected states, directly resulting in excessive insurance premiums being charged to the customers they insure and/or have insured, including the Plaintiff here. Liberty Mutual has methodically taken advantage of their participation in, and relationship with, the National Council on Compensation Insurance ("NCCI"), the organization charged with issuing and enforcing the rules that govern workers' compensation in the 35 affected states, in furtherance of their scheme to defraud employers and obtain and retain greater premium amounts than the insureds should be paying.

2.      Specifically, as described herein, Liberty Mutual has used and continues to use NCCI and its knowing and complicit lack of oversight and diligence to help facilitate reporting deficiencies and the corresponding use of inaccurate data in calculating insurance premiums for insureds. Liberty Mutual improperly benefits not only from its reporting deficiencies and inaccurate data, but from the reporting deficiencies and inaccurate data reported by other insurers as well, who likewise use NCCI's knowing and complicit lack of oversight and diligence in the same manner.

3.      By law, contract and pursuant to NCCI rules, when Liberty Mutual has received reimbursements from third parties for insurance payments expended on behalf of insureds, they were required to report such recoveries to NCCI through unit statistical reports, revise unit

statistical reports, and to adjust reserves, so that the employers would not be penalized with higher premiums for insurance losses that were actually shared by a third party (i.e., not borne by Liberty Mutual alone), or where Liberty Mutual otherwise received reimbursement for part or all of the loss. Instead, Liberty Mutual, for years and continuing to this day, has systematically withheld the recovery and reimbursement related information they were obligated to report, thus denying the Plaintiff and all others similarly situated their rightful entitlement to the benefits of reimbursements and recoveries that Liberty Mutual received. Further, in instances where an insured's losses were lowered subsequent to a claim, as a result of a subrogated recovery or otherwise, and Liberty Mutual received notice from NCCI that the statistical data upon which premiums had been calculated was changed, Liberty had a duty to recalculate premiums based on the new data, and issue refunds where necessary. Liberty Mutual, for years and continuing to this day, has consistently and systematically failed to issue such refunds where due.

4.      On behalf of itself and all others similarly situated, Plaintiff brings this action alleging Breach of Contract, Unjust Enrichment, and violations of the Rackateer Influenced and Corrupt Organizations Act (RICO) and the Massachusetts Consumer Protection Act, MGL. Ch. 93A, §1 *et seq.* "The Failure to Report Class" and "Failure to Reimburse Class," on behalf of which the respective claims in this Complaint are brought, are defined below.

## PARTIES AND JURISDICTION

5.      Plaintiff Valley Container Inc. ("Valley") is a company incorporated under the laws of the State of Connecticut, and domiciled in the State of Connecticut with its principal place of business and headquarters located at 850 Union Avenue, Bridgeport, CT. Valley purchased workers' compensation insurance from Defendants Liberty Mutual Group, Inc., Liberty Mutual Insurance Company, and Liberty Mutual Fire Insurance Company, and their subsidiaries during years relevant to the conduct at issue in this complaint.

6.     Plaintiff is a business with employees working in the State of Connecticut, and is required by law to have in effect at all times a policy of workers' compensation insurance for the benefit of its employees.

7.     Plaintiff brings this action on its own behalf and as representative of the Classes, as defined herein.

8.     Defendant Liberty Mutual Group, Inc. is a corporation incorporated under the laws of the Commonwealth of Massachusetts, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint, Liberty Mutual Group, Inc. has promoted itself and its subsidiaries named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. Liberty Mutual Group, Inc. conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

9.     Defendant Liberty Mutual Insurance Company is a corporation incorporated under the laws of the Commonwealth of Massachusetts, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint, Liberty Mutual Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Liberty Mutual Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

10.     Defendant Liberty Mutual Fire Insurance Company is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this

Complaint, Liberty Mutual Fire Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. Liberty Mutual Fire Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

11.     Defendant Liberty Insurance Corporation is a corporation incorporated under the laws of the State of Illinois, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. At all times pertinent to this Complaint, Liberty Insurance Corporation has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. Liberty Insurance Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

12.     Defendant LM Insurance Corporation is a corporation incorporated under the laws of the State of Illinois, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. At all times pertinent to this Complaint LM Insurance Corporation has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. LM Insurance Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

13.     Defendant First Liberty Insurance Corporation is a corporation incorporated under the laws of the State of Illinois, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. At all times pertinent to this Complaint First Liberty Insurance Corporation has promoted itself and associated companies named as

defendants herein as a leader in the insurance industry, with superior expertise and profitability. First Liberty Insurance Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

14.    Defendant Liberty County Mutual Insurance Corporation is a corporation incorporated under the laws of the State of Texas, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Liberty County Mutual Insurance Corporation has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Liberty County Mutual Insurance Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

15.    Defendant Wausau General Insurance Company is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Wausau General Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Wausau General Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

16.    Defendant Wausau Underwriters Insurance Company is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Wausau Underwriters Insurance Company has promoted itself and

associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. Wausau Underwriters Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

17.     Defendant Employers Insurance Company of Wausau is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. At all times pertinent to this Complaint Employers Insurance Company of Wausau has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. Employers Insurance Company of Wausau conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

18.     Defendant Peerless Insurance Company is a corporation incorporated under the laws of the State of New Hampshire, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. At all times pertinent to this Complaint Peerless Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. Peerless Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

19.     Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company, as well as Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty County Mutual Insurance Company, Wausau General Insurance Company, Wausau Underwriters Insurance Company, Employers Insurance

Company of Wausau and Peerless Insurance Company are "stock" insurance companies of Liberty Mutual Group, Inc., also known in the industry as "paper companies." These companies operate to write insurance under the "Liberty Mutual Insurance" business, marketing and brand name, and operate as a unified insurance company along with Defendant Liberty Mutual Group, Inc.

20.     Liberty Mutual is engaged in the business of workers' compensation insurance in the State of Massachusetts and in most of the other 50 states in the United States, including but not limited to the 35 "NCCI States" at issue in this complaint, which are:  Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, and West Virginia.

21.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 *et seq.* with a cause of action arising under Federal Law, particularly 18 U.S.C. §1962(c) (*see* Fourth Claim for Relief). This Court has supplemental jurisdiction over Plaintiffs' state law claims arising under 28 U.S.C. §§1367 and 1338(b), where Plaintiffs state law based claims are interrelated with Plaintiff's Federal Law claims, arise from a common nucleus of facts, and adjudication of Plaintiffs state law claims furthers the interests of judicial economy.

22.     This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §1332 *et seq.* Plaintiff Valley is a citizen of the State of Connecticut with its principle place of business in the state of Connecticut.  All Defendants are citizens of the Commonwealth of Massachusetts and have their principle place of business in the Commonwealth of Massachusetts.  The amount in controversy exceeds $5 million.

## COMMON FACTUAL ALLEGATIONS

### I.    The National Council on Compensation Insurance

23.    The National Council on Compensation Insurance ("NCCI") is the largest provider of workers' compensation data, statistics, and research in the United States. NCCI is a creation and tool of the insurance industry, which serves the function of consolidating and standardizing the details of workers' compensation insurance premium computation.

24.    NCCI currently serves as the sole workers' compensation statistical agent and rating organization for thirty-five states.[1]   Herein, these 35 states will be referred to collectively as the "NCCI States."

25.    As a statistical agent and rating organization, NCCI produces and files rates, loss costs, forms, classifications, rating plans, and other materials that are necessary to write workers' compensation insurance policies.

26.    The following have been identified by NCCI as its "core services":

    a.    Rate and advisory loss cost filings

    b.    Cost analyses of proposed and enacted legislation

    c.    Residual market management

    d.    Production of experience ratings

    e.    Statistical and compliance services

    f.    Maintenance of the workers' compensation infrastructure of classifications, rules, plans, and forms.

*See* NCCI, About NCCI, available at http://www.ncci.com/documents/About-NCCI-Facts.pdf.

---

[1] The thirty-five NCCI States rating states are: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas Utah, Vermont, Virginia, and West Virginia.

27.     Among other things, NCCI promulgates rules and standards in connection with the calculation of "experience ratings," which are discussed in greater detail below. The NCCI rules and standards are adopted, either wholesale or substantively so, and applied throughout the NCCI States, all of which have appointed NCCI and its rules and manuals as the designated rating agent for their state. An integral part of calculating experience ratings under NCCI rules and standards is the accurate reporting of loss and recovery data by insurers like Liberty Mutual. At all relevant times, NCCI has willfully and complicitly failed to police whether insurers in NCCI States provide accurate loss and recovery data, and whether they reimburse insureds where due. At all relevant times, NCCI has knowingly and complictly failed to maintain a meaningful mechanism for enforcing the NCCI rules and standards governing the reporting of such data and reimbursement. Rather, NCCI largely or entirely relies upon the insurers themselves to provide accurate information, even though it knows the insurers routinely fail to do so. This lack of oversight is by design and is a function of the fact that NCCI is a creation and tool of Liberty Mutual and the other insurers that control NCCI's decision-making.

28.     NCCI formally affiliates with companies that are licensed to write or self-insure workers' compensation in NCCI States. Companies may elect one of three levels of affiliation: Partial-States Subscriber, All-States Subscriber, or Member.

29.     "Member" is the highest level of formal affiliation that NCCI offers to insurers. In addition to the rights granted to Partial-States Subscribers and All-States Subscribers, Members have the right to vote on matters submitted to the Members, to participate in NCCI's Board of Directors and Committees, and to participate in the distribution of NCCI's assets.

30.     All entities under common ownership or management must make the same election – either Member or Subscriber.  Each entity's election is made enforceable by contract with NCCI.

31.     NCCI is governed and controlled by its Members and its Board of Directors, which is responsible for establishing corporate strategy and acting as a resource for management on matters of planning and policy.  *See* NCCI, About NCCI, available at http://www.ncci.com/documents/About-NCCI-Facts.pdf.

32.     Members of NCCI share numerous purposes in common, including to position NCCI as the primary rating organization for workers' compensation nationwide, and to then exploit NCCI's lack of oversight and diligence in policing insurer reporting for their own (i.e., for the insurers' own) financial benefit and gain and the expense of insured employers.

33.     Upon information and belief, at all times pertinent to this Complaint, Liberty Mutual has been a Member of NCCI, and as such, has been entitled to vote on matters submitted by NCCI to its Members, to participate in NCCI's Board of Directors and Committees, and to participate in the distribution of NCCI's assets.

34.     Upon information and belief, Liberty Mutual is one of the largest and most influential NCCI Members.  As a major provider of workers' compensation insurance, Liberty Mutual has been closely affiliated with NCCI at all relevant times, among other things utilizing NCCI's rates, loss costs, forms, classifications, rating plans, and other materials and services to write workers' compensation insurance policies.

35.     Members and leaders in the insurance industry regularly rotate their executives through NCCI's Board of Directors.  Most recently, in 2017, Tracy A. Ryan, Executive Vice President and Chief Claims Officer for Liberty Mutual Insurance, chaired the Board of Directors

of NCCI. Historically, other Liberty Mutual executives have sat in governance of NCCI including but not limited to Brian Melas, senior vice president of Commercial Markets for Liberty Mutual Insurance who sat on the Board of Directors in 2009.

36.     Assigned Risk Pools, sometimes also referred to as residual markets, or markets of last resort, were created by states to provide an insurance option for companies with poor loss history or other statistics that make it difficult or impossible to obtain coverage on the open workers' compensation insurance market. This enables these companies to meet their insurance requirements under state laws.

37.     20 states and the District of Columbia have designated NCCI as the assigned risk administrator. They are: Alabama, Alaska, Arizona, Arkansas, Connecticut, District of Columbia, Georgia, Idaho, Illinois, Iowa, Kansas, Nevada, New Hampshire, New Mexico, Oregon, South Carolina, South Dakota, Tennessee, Vermont, Virginia, and West Virginia. In turn, insurers act as "direct assignment" insurers, and offer coverage through this pool. Liberty Mutual is one of the direct assignment insurers in NCCI's assigned risk program.

## II.     **Workers' Compensation Premium Calculation**

38.     Most states, including all NCCI States, require that employers meet minimum requirements for workers' compensation insurance.

39.     In NCCI States, workers' compensation insurance premiums are calculated on the basis of multiple criteria including an employer's recent claims experience, called the "workers' compensation experience rating."

40.     Specifically, under NCCI rules, to determine the actual premium that is due for an employer, a "manual premium" is calculated and then a workers' compensation experience rating and other factors are applied to the "manual premium."

41.     An employer's manual premium is calculated using "manual rates" assigned to employers in a given job classification and, within each NCCI State, is the same state-wide for all policyholders in a given job classification.

42.     Manual rates are calculated using "Loss Cost" factors as determined by the NCCI manuals in NCCI States.  NCCI serves as the workers' compensation statistical agents and rating organizations for businesses in NCCI States.  NCCI calculates premiums using NCCI's published manuals, including the Workers' Compensation Statistical Plan, Part I: Unit Statistical Reporting, and the Experience Rating Plan Manual for Workers' Compensation and Employers Liability Insurance.

43.     Under NCCI rules, the manual rate applicable to any given company is adjusted or modified by the company's unique workers' compensation loss history.  This modification is called the "experience modification rating," "experience rating," or "ex-mod."  For NCCI States, the ex-mod for each employer is calculated by NCCI based on the information reported by the insurers via "unit statistical reports" and "correction reports," as discussed further herein.  The manual rate is multiplied by the unique ex mod (among other factors) to determine an individual employer's premium for workers' compensation insurance.

44.     An employer's ex-mod is a number ranging from 0.60 to 3.0 based on the employer's loss history under prior workers' compensation policies as reported by its insurer pursuant to NCCI's rules. An employer's loss history includes money its insurer paid out for claims under its prior policies adjusted by any money the insurer recovered from third-parties, including subrogation recoveries and recoveries from special funds. An employer with a relatively good loss history (fewer or smaller claims than expected) will have a lower ex-mod,

while an employer with a relatively poor loss history (more or larger claims than expected) will have a higher ex-mod.

45.     Thus, the higher an employer's ex-mod, the higher their premiums will be, all else being equal.

Failure to Report Reimbursements and/or Recoveries

46.     The ex-mod is designed to adjust an employer's current premium based on prior loss experience.  This adjustment is accomplished by comparing loss information for a particular employer from prior years, to average expected losses of similar companies for those same years. The ex-mod is then applied to the manual rate to calculate premiums in future years.

47.     However, ex-mods are not static, and under certain circumstances an employer's ex-mod may be adjusted based on later reimbursements and recoveries that are received by the insurer (i.e., after the loss was incurred by the insurer), including reimbursements or recoveries from third parties responsible for the loss that led to the underlying workers' compensation claim and caused an increase in the ex-mod, or from other sources of recoveries.  The logic of this is that an employer's ex-mod is based on the employer's loss history and these reimbursements and recoveries from third party sources reduce, dollar-for-dollar, the insurer's actual losses for that employer.

48.     In order for an employer's ex-mod to appropriately reflect such reimbursements and recoveries received by the insurer, the reimbursements and recoveries must be reflected on "unit statistical reports" and "correction reports" that pursuant to NCCI rules must be sent by the insurers to NCCI.

49.     Where an insurer has been reimbursed or recovered losses from responsible third parties or other sources, the NCCI Workers' Compensation Statistical Plan at Part 5, No. 2,

applicable regulations, and principles of good faith and fair business practice require that the

employer's loss history be adjusted to reflect that a reimbursement or recovery has been made.

This adjustment, in turn, reduces the amount of loss attributed to an employer, reduces the

employer's ex-mod, and ultimately reduces the premiums of that employer, currently and/or

retroactively.

50.     The NCCI Workers' Compensation Statistical Plan, Part 5 No. 2 states as follows:

> "Correction reports must be filed without delay when any of the
> conditions below occur. The carrier or claimant has received, or
> anticipates receiving, reimbursement from a Second Injury or similar type
> fund. When such a recovery is received by the carrier subsequent to the
> reporting of the claim (between valuation dates), but within one year after
> the 5th report due date, correction reports must be filed revising the paid
> and incurred loss on the claim as described in Part 4, Item 11…

> "The carrier or claimant has obtained a subrogation recovery in an action
> against a third party. When such a recovery is received by the carrier
> subsequent to the reporting of the claim (between valuation dates), but
> within one year after the 5th report due date, correction reports must be
> filed revising the paid and incurred loss on the claim as described in Part
> 4, Item 15. If an anticipated recovery becomes known by the carrier, or a
> recovery is paid to the carrier as of the 6th report due date or subsequent, a
> correction report is not required; all adjustments are reported at the next
> valuation date if the claim is open. Correction reports are required only for
> prior reports that reflected an amount higher than the net incurred cost. If
> the total recovery amount is less than 10 percent of the gross incurred cost
> of the claim, do not file a correction report."

51.     The NCCI Workers' Compensation Statistical Plan, Part I, Section III,

subsections (A)(3) states as follows:

> "Corrections must be submitted within 60 days of obtaining a subrogation
> recovery from a third party.  Paid and incurred loss amounts of all prior
> reports (valuations) of the claim must be adjusted to reflect the impact of
> the recovery.  **All prior reports (valuations) where the amounts exceed
> the carrier's final paid amount must be corrected…**" (emphasis
> added).

52.     Loss history for a particular employer is reported to NCCI by the insurer in the

form of a "unit statistical report."  Reimbursements and recoveries are reported to NCCI through

unit statistical reports, and where the recovery occurs after a unit statistical report has been filed,

through revised unit statistical reports, also known as "correction reports." When unit statistical

reports do not reflect reimbursements and recoveries or are not revised to reflect such, and

reserves are not properly adjusted downward, the information upon which NCCI relies in

formulating an employer's unique ex-mod is incorrect, and the resulting premium rates for the

employer are artificially inflated, to the insurer's advantage and the employer's detriment.

53.     When an insurer (such as Liberty Mutual) fails to properly file or revise a unit

statistical report after being reimbursed for all or a portion of the claim from a responsible third

party or another source, the employer continues to pay an inflated (i.e., excessive) premium and

is not reimbursed for past premiums paid which should be partially reimbursed based on what

should be a modified ex-mod and corresponding retroactive reduction in past premiums. Failure

to revise unit statistical reports undermines the benefit to employers of NCCI's centralized

premium calculation system by paying funds directly into the coffers of the insurers to the

detriment of the insured employer. In other words, the employer's "experience" continues to

reflect a loss for which the employer was not fully responsible (i.e., reflects a higher loss than the

insurer actually incurred) and for which the insurer has received a partial or complete recovery,

while the insurer has been reimbursed for those same losses.

54.     In this manner, the employer's loss history (and corresponding premiums),

continue to reflect a loss which was the responsibility of another party and/or for which the

insurer has received reimbursement or partial reimbursement for the loss. If such

reimbursements or recoveries are not reported, an employer continues to pay an inflated

premium for losses which were not the responsibility of the employer. The end result is that the

insurer has recovered from the responsible party or another source, as it is entitled to pursue, but

also continues to reap the benefit of a higher premium charged to an insured employer for a loss which was and should not remain the responsibility of the insured employer.

55.     Because of the standardized and coordinated manner in which loss and recovery data is reported, and the manner in which ex-mods are calculated by NCCI, a loss incurred in connection with an employer's policy in one state can affect that employer's premiums not only for the state where the particular loss occurred, but also for other states where that employer has operations. Similarly, a recovery received by an insurer in connection with a loss can affect the premiums paid by the employer in question in states beyond the state in which the loss (and recovery) occurred.

56.     Insurers have several sources of reimbursement and recovery for losses that trigger an obligation to revise unit statistical reports and adjust reserves. Sources of reimbursement and recovery include, but are not limited to: claims against responsible third parties pursuant to subrogation rights including recoveries from other insurers, claims on state Second Injury Funds for reimbursement for qualifying injuries, and adjustment of calculated losses for claims found to be fraudulent (e.g., where the insured's employee fraudulently asserts they were injured on the job).

Failure to Issue Reimbursement Checks After Receiving Notice

57.     Insured companies cannot be credited for recoveries and reimbursements received by the insurer if insurers like Liberty Mutual do not properly report and revise unit statistical data, as described above. However, the system also depends upon insurers like Liberty Mutual issuing refund checks when receiving notice from NCCI of a change in statistical data that would result in lower premiums, such as a lowered ex-mod. In other words, insurers must both report the recovery to lower the ex-mod **and** properly issue the refund once the ex-mod is lowered.

58.    When an ex-mod is lowered, an insurance company such as Liberty Mutual receives an express and direct communication from NCCI about the lowered ex-mod.

59.    Pursuant to NCCI rules, the insurer must issue a premium reimbursement when a lowered ex-mod would result in lower premiums for the policy year(s) affected.

60.    The NCCI Experience Rating Plan Manual Part 4 Section E states that a decrease in the ex-mod within the revision period, that is through the 6th report date, must be applied retroactive to the inception of the policy.

61.    When an insurer receives notice of a lowered ex-mod for one of its employer insureds, it may or may not be as a result of any recovery that particular insurer received. The recovery may have been made by a previous insurer on a previous claim (i.e., when that employer was insured by that previous insurer); however, because ex-mods affect premium in subsequent years, the higher premium may have been paid to a subsequent insurer. In this instance, the prior insurer must *report* the recovery, and the subsequent insurer must *reimburse* the excess premium. Both acts are critical to a functioning system. Liberty Mutual has systematically failed in both of these respects to the detriment of Plaintiff Valley, and the rest of the Classes it represents. NCCI at all relevant times has been complicit in, participated in, and knowingly and willfully facilitated this conduct including, *inter alia*, through its knowing and deliberate failure to monitor insurers on both the reporting and the reimbursement fronts.

III.    **Liberty Mutual' Failure to Report Reimbursements and Recoveries, and Corresponding Failure to Issue Reimbursements, Regarding Plaintiff Valley**

62.    The Defendant Liberty Mutual insured Valley for the policy period 10/20/2012 to 10/19/2013.

63.    On 9/4/2013, an employee of policyholder Valley experienced an industrial injury and subsequently filed a workers' compensation claim.

64.     The claim was accepted by Liberty Mutual and  Liberty Mutual paid benefits to the employee.

65.     It was assigned the claim ID 765850230.

66.     Subsequent to these claims, at some time not known to Plaintiff because the recovery was unknown and unknowable to Plaintiff, Liberty Mutual received a recovery from a third party.

67.     At its height, the claim's incurred value, defined as both the medical, indemnity, and reserves values for a claim, was valued at approximately $47,000.  Liberty Mutual was reimbursed most of that from a third party or third parties. Subsequent to the reimbursement, the remaining loss on the claim was valued at just $120.

68.     The claim affected the experience modification worksheets effective 10/20/2014-15, 10/20/2015-16, and 10/20/2016-17.

69.     Valley paid workers' compensation premiums to a subsequent insurer which reflected the loss value of the claim far in excess of $120 for the 2014 and 2015 years.

70.     Despite having been reimbursed by a third party for most of the loss for this claim, Liberty Mutual failed to comply with NCCI rules by failing to revise the unit statistical reports submitted to NCCI for 2014 and 2015 to accurately reflect the recovery.

71.     Liberty Mutual's failure to revise the unit statistical reports for 2014 and 2015 deprived Valley of what should have been partial reimbursement of premiums Valley paid during that time period. Liberty Mutual's failure to revise the unit statistical reports denied Valley a premium reimbursement of approximately $13,030.00 for the 2014 year that the ex-mod was not properly recalculated.  This does not include excess premium paid in the 2015 year, which can be calculated as well.

72.     Further, Liberty Mutual's failure to properly revise the 2014 and 2015 unit statistical reports resulted in Valley and all others businesses in the same job classification paying a higher manual rate.

73.     Upon information and belief, for years and continuing to this day, Liberty Mutual has consistently and intentionally failed to timely and properly report consistent with applicable NCCI rules and standards, data on recoveries for its insureds throughout the NCCI States.

74.     Upon information and belief, the actions complained about in this complaint, including Liberty Mutual' failure to timely and properly report recoveries and revise unit statistical reports, have been of an ongoing and continuous nature, commencing with the adoption of NCCI Statistical Plan in each NCCI State and continuing at least until the date the initial Complaint in this case was filed.

**IV.    Liberty Mutual's Failure to Issue a Refund to Plaintiff Valley Upon Receipt of a Lower Ex Mod.**

75.     Liberty Mutual also provided workers' compensation insurance to Valley for the period 10/20/2010-11

76.     The policy number for that period is WC7-Z11-260087-010

77.     That policy was issued with an ex-mod factor of 1.14.

78.     The audit for this policy period, dated 12/20/2011, also used an ex-mod factor of 1.14.

79.     On 4/5/2012, NCCI revised Valley's ex-mod factor downward to 1.13.  Liberty Mutual received this information from NCCI.

80.     Under section 4-E of the NCCI Experience Rating Plan Manual 2003 Edition, Liberty Mutual was obligated to then apply this lower ex-mod factor to the audit retroactive to the policy inception date of 10/20/2010.

81.     Liberty Mutual has never revised the audit to apply this lowered ex-mod factor. Liberty Mutual's failure to do so has resulted in Valley not receiving partial premium refunds of approximately $1,948.00 that Valley should have received.

82.     Upon information and belief, the actions complained about in this complaint, including Liberty Mutual' failure to provide premium reimbursements as required upon receipt of lower ex mods, have been of an ongoing and continuous nature, commencing with the adoption of NCCI Statistical Plan in each NCCI State and continuing at least until the date the initial Complaint in this case was filed.

83.     Valley was not, nor could it have reasonably been aware of Liberty Mutual's failure to report the recovery received, corresponding failure to provide a reimbursement, or failure to provide a refund that should have been provided when Valley's ex mod was lowered. Valley did not become aware of any of these failures, omissions, and breaches until 2019. This lack of knowledge of Liberty Mutual's failures, omissions, and breaches is a direct product and result of Liberty Mutual's abuses of the system and failures to disclose this information to NCCI and/or its insureds.

### Contracts of Insurance with the Class Members

84.     At all times relevant to this Complaint, the Defendants existed and operated as a workers' compensation insurer within the NCCI States. As part of their privilege to operate within the NCCI States they were subject to the statutory and regulatory laws relevant to workers' compensation and entered into a contract with the Plaintiff and members of the proposed Classes, pursuant to which Defendants were bound to adhere to all rules and regulations mandated by state law.

85.     Plaintiff Valley, and other unnamed class members, each purchased workers' compensation insurance policies from Liberty Mutual and its "stock" or "paper" companies.

These policies contained form language that was identical for all purposes relevant to the claims

in this case. The policies contained the following provision:

> All premiums for this policy will be determined by our manuals of rules,
> rates, rating plans and classifications. We may change our manuals and
> apply the changes to this policy if authorized by law or governmental
> agency regulating this insurance.

> *   *   *

> The final premium will be determined after this policy ends by using the
> actual, not the estimated, premium basis and the proper classifications and
> rates that lawfully apply to the business and work covered by the policy.

## V.   Liberty Mutual and its Property/Casualty Workers' Compensation Insurance Subsidiaries Operate as a Unified Entity

86.   Defendant Liberty Mutual Group, Inc., conducts its property casualty workers'

compensation insurance business through a series of "stock" or "paper" companies, and

collectively markets this enterprise under the name "Liberty Mutual" and/or "Liberty Mutual

Insurance."

87.   Defendants Liberty Mutual Insurance Company,  Liberty Mutual Fire Insurance

Company,  Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty

Insurance Corporation, Liberty County Mutual Insurance Company, Wausau General Insurance

Company, Wausau Underwriters Insurance Company, Employers Insurance Company of

Wausau and Peerless Insurance Company are "stock" insurance companies of Liberty Mutual

Group, Inc., also known in the industry as "paper companies."

88.   The stock companies "write" the individual insurance policies, but in reality

Liberty Mutual and its stock companies operate as one unified enterprise.

89.   Insureds such as Valley are sold an insurance product from "Liberty Mutual,"

and/or "Liberty Mutual Insurance" and have no direct dealing with or awareness of the stock

company that has written their policy.

90.     Upon information and belief, marketing materials, correspondence, accounting and audits all come from "Liberty Mutual."

91.     Upon information and belief, underwriting, claims adjusting and management, audits and regulatory reporting all occur through one central entity.

92.     All of the stock companies operate with a principal place of business at the same location as Liberty Mutual Group, Inc, at 175 Berkeley Street in Boston, Massachusetts.

93.     Accordingly, the wrongdoing and misconduct complained of herein was committed in concert and jointly by Liberty Mutual Group, Inc. and its subsidiary stock companies, operating as one unified insurance company.

## CLASS ACTION ALLEGATIONS

94.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff Valley brings claims, as set forth below, on behalf of itself and as representative of the following "Failure to Report Class" and "Failure to Reimburse Class":

### Failure to Report Class

All employers that had a workers' compensation claim filed in an NCCI State[2] pursuant to a policy with Liberty Mutual that was effective on or after a date certain, determined by the applicable statute of limitations for the relevant NCCI State, where subsequent to the claim: (a) Liberty Mutual received a third-party recovery or recoveries totaling 10% or more of the gross incurred loss for the claim within one year after the due date for the fifth level unit statistical report for such policy following such claim; and (b) the employer had one or more experience modification ratings effective on or after a date certain determined by the applicable statute of limitations in the relevant NCCI State, which incorporated such claim, but, as of the date of this complaint, did not account for Liberty Mutual's recovery

---

[2] The NCCI States are:  Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

95.

**Failure to Reimburse Class**

All employers that had a workers' compensation claim filed in an NCCI
State[3] pursuant to a policy of insurance that was effective on or after a date
certain, determined by the applicable statute of limitations for the relevant
NCCI State, where subsequent to the claim Liberty Mutual received notice
from NCCI that one or all of the experience modification ratings which
were affected by the claim were reduced; such reduction which resulted in
lowering any premium moneys paid which were calculated using that
experience modification rating; and for which Liberty Mutual failed to
issue a refund.

96.     The Classes are too numerous for joinder to be practicable.  On information and

belief, the Classes each consist of at least thousands of persons and entities.

97.     Plaintiff is a member of both Classes as defined and its  claims are typical of the

claims of the Classes, whose claims, like those of Plaintiff, all arise out of the same reporting and

reimbursement failures by Defendants described herein., Plaintiff and the members of the

Classes were damaged in the same way.

98.     Plaintiff is committed to the vigorous prosecution of this action and has retained

competent counsel experienced in the prosecution of class actions, insurance fraud, and the

insurance rate-making process.  Accordingly, Plaintiff is an adequate representative and will

fairly and adequately protect the interests of the Classes.

99.     There are several common questions of law and fact in this case.  Questions of

law and fact common to the Failure to Report Class include, but are not limited to the following:

---

[3] The NCCI States are:  Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida,
Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland,
Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire,
New Mexico, New York, North Carolina, Oklahoma, Oregon, Rhode Island, South Carolina,
South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

    a.     Were Defendants required to timely and properly report reimbursements and recoveries from third parties to the NCCI?

    b.     Were Defendants required to timely and properly revise unit statistical reports upon receiving reimbursements and recoveries from third parties?

    c.     Were Defendants required to adjust reserves after receiving reimbursements and recoveries from third parties?

    d.     Are Plaintiff and the members of the proposed Failure to Report Class entitled to damages and/or restitution?

    e.     What is the proper methodology for calculating the harm to Plaintiff and the members of the proposed Failure to Report Class?

    f.     Are Plaintiff and the members of the proposed Failure to Report Class entitled to injunctive relief to ensure the alleged misconduct does not continue in the future?

    g.     Were Defendants unjustly enriched, at the expense of Plaintiff and the members of the proposed Failure to Report Class?

    h.     Do NCCI and Liberty Mutual comprise an association-in-fact enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §1962(c)?

100.    Questions of law and fact common to the Failure to Reimburse Class include, but are not limited to the following:

    a.     Were Defendants required to reimburse premium amounts after receipt of notice from NCCI of lower experience modification ratings?

    b.     Are Plaintiff and the members of the proposed Failure to Reimburse Class entitled to damages and/or restitution?

       c.       What is the proper methodology for calculating the harm to Plaintiff and the members of the proposed Failure to Reimburse Class?

       d.       Are Plaintiff and the members of the proposed Failure to Reimburse Class entitled to injunctive relief to ensure the alleged misconduct does not continue in the future?

       e.       Were Defendants unjustly enriched, at the expense of Plaintiff and the members of the proposed Failure to Reimburse Class?

       f.       Do NCCI and Liberty Mutual comprise an association-in-fact enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §1962(c)?

101.   The above-identified common questions predominate over questions, if any, that may affect only individual members of the Classes.

102.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Liberty Mutual, no class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the class members will continue to suffer losses and Liberty Mutual's misconduct alleged herein will proceed without an adequate remedy.

103.   Even if class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual

lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

104.    As described herein, Defendants have acted or refused to act, and continue to act or refuse to act, on grounds that apply generally to the Classes, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

73.    Plaintiff repeats and realleges each and every allegation of this Complaint as if fully set forth herein verbatim.

74.    Plaintiff brings this claim on behalf of the Failure to Report Class and the Failure to Reimburse Class.

75.    Defendants entered into contracts to provide workers' compensation insurance to Plaintiff and all insureds in the proposed Classes in exchange for premiums to be paid by the insureds.

76.    These insurance contracts provided that the premiums paid by the insureds would be "determined by [Defendants'] manuals of rules, rates, rating plans and classifications" and that the "final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by the policy."

77.    Defendants breached their contracts with Plaintiff and all insureds in the proposed Class through their conduct alleged herein, including by: (a) failing to timely or properly revise unit statistical reports and failing to timely or properly adjust reserves after receiving reimbursements and recoveries as provided for in the contracts and required by state law and

regulations; and (b) failing to reimburse premium amounts after receipt of notice from NCCI of lower experience modification ratings.

78.     Defendants' contractual breaches alleged herein have resulted in damages to Plaintiff Valley and the other members of the proposed Classes, including paying premium amounts to Defendants greater than those owed by the terms of the contracts, and paying other insurers higher premium amounts than they would have paid but for Defendants contractual breaches alleged herein.

79.     Plaintiff Valley and the members of the proposed Classes have performed all material conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contracts with the Defendants

80.     Defendants' breach of the material terms of the contracts has proximately caused actual and consequential damages to the Plaintiff Valley as well as the members of the proposed Classes.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

105.     Plaintiff re-alleges and incorporates by reference each and every allegation of this Complaint as if set forth fully herein.

106.     Plaintiff brings this claim on behalf of the Failure to Report Class and the Failure to Reimburse Class.  This claim is brought in the alternative to the First Claim for Relief.

107.     Plaintiff Valley and members of the proposed Classes have conferred valuable benefits upon Defendants, including through the payment of premiums for workers' compensation insurance pursuant to policies with Defendants.

108.    As alleged herein, Defendants have knowingly and intentionally: (a) reported inaccurate information, withheld and failed to timely report accurate unit statistical reports and other information, and failed to timely or properly adjust reserves, after receiving reimbursements and recoveries from third parties for losses incurred on the policies of Plaintiff and the Failure to Report Class; and (b) failed to reimburse premium amounts to Plaintiff and the Failure to Reimburse Class after receipt of notice from NCCI of lower experience modification ratings

109.    As a result of the misconduct alleged herein, Defendant has unjustly received and retained and failed to pay funds properly belonging to Plaintiff Valley and the members of the Classes.

110.    Defendants have deprived Plaintiff Valley and the members of the Classes of monies which are due and owing to them by manipulating the premium payment amounts to exclude downward adjustments for reimbursements and recoveries and as otherwise set forth herein.

111.    Defendants' misconduct alleged herein has unjustly enriched the Defendants in that they are not lawfully entitled to keep the monies due and owed to the Plaintiff and Classes. Defendants' unjust enrichment has come at the expense and detriment of Plaintiff and the members of the Classes.

112.    Under these circumstances, it would be inequitable for Defendants to retain the amounts for which Defendants have been unjustly enriched and which are due and owing to Plaintiff and the members of the Classes. Justice requires that all such amounts be paid and restored to Plaintiff and the members of the Classes.

113.    Plaintiff and members of the Classes have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### Violations of M.G.L. Chapter 93A §1 *et seq.*

114.   Plaintiff re-alleges and incorporates by reference each and every allegation of this Complaint as if set forth fully herein.

115.   Plaintiff brings this claim on behalf of the Failure to Report Class and the Failure to Reimburse Class.

116.   At all relevant times hereto Liberty Mutual was engaged in trade or commerce, in particular the business of providing workers' compensation insurance utilizing centralized headquarters and offices in the Commonwealth of Massachusetts.

117.   Upon information and belief, the contracts for insurance at issue in this case were created, adopted, and approved for use in all states at issue, through conduct at Liberty Mutual's operations in Massachusetts.

118.   Upon information and belief, the insurance adjusting activities, responsibilities, and failures at issue in this case, including with respect to reporting of statistical data, and reimbursing of premium where due, were created, adopted, developed and executed through conduct at Liberty Mutual's operations in Massachusetts.

119.   The Consumer Protection Act forbids unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce.

120.   The acts of the Liberty Mutual as alleged in this complaint constitute unfair and deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 3, 940 C.M.R. 3.05(1), and 940 C.M.R. 3.16(1) and (2).  Further the acts of the Liberty Mutual as described in

this Complaint constitute violations of M.G.L. 176D pertaining to the practices of insurance businesses in the Commonwealth of Massachusetts, actionable under M.G.L. Ch. 93A §1 *et seq.*

121.    Defendants' actions and transactions constituting unfair or deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts.

122.    The center of gravity of the circumstances that give rise to Plaintiff's claims occurred and/or originated primarily and substantially within the Commonwealth of Massachusetts.

123.    Defendants' principle place of business is at 175 Berkley Street, Boston, Massachusetts, and Defendants operate other facilities within the Commonwealth of Massachusetts.  Upon information and belief, all or substantially all of the events, policies and practices, responsibilities, conduct, omissions, and failures which give rise to this claim occurred in the Commonwealth of Massachusetts, including but not limited to with respect to reporting and failing to report recoveries and reimbursements, providing and failing to provide unit statistical reports and correction reports, failing to provide required reimbursements, authorization and drafting of applicable workers' compensation contracts, policies and practices, maintenance of the relationship between NCCI and Liberty Mutual, authorization for any contracts which form the basis of that relationship, agreement, including the subscription agreement, the policies (or lack thereof) and practices which govern Liberty Mutual's practices regarding the reporting of reimbursement, the issuance of checks for reimbursement, and other actions central to the workers' compensation business of Liberty Mutual.  Among other things, upon information and belief, at all times material to this Complaint, the regulatory reporting division within Liberty Mutual primarily responsible for submitting data to NCCI, and the

divisions and personnel responsible for effectuating reimbursements of premiums where required, were located in the Commonwealth of Massachusetts.

124.    Defendants' actions described herein were performed willfully and knowingly.

125.    The conduct of Defendant was malicious, corrupt, and intentional and/or reckless to a degree sufficient to support an award of punitive damages against Defendant.

126.    As a result of the unfair or deceptive acts or practices described above, Plaintiff Valley and the members of the Classes sustained injury including but not limited to the injuries detailed above, incorporated herein.

## FOURTH CLAIM FOR RELIEF

## FIFTH CLAIM FOR RELIEFViolation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

127.    Plaintiff re-alleges and incorporates by reference each and every allegation of this Complaint as if set forth fully herein.

128.    Plaintiff brings this claim on behalf of the Failure to Report Class and the Failure to Reimburse Class.

129.    This claim seeks redress for Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c).

130.    Pursuant to 18 U.S.C. §1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

131.    At all times material to this Complaint, Liberty Mutual were "person[s]" within the meaning of 18 U.S.C. §1962(c).

132.   NCCI is a corporation whose activities affect interstate commerce within the meaning of 18 U.S.C. §1962(c).

133.   An association-in-fact enterprise comprising NCCI and Liberty Mutual is an enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §1962(c).

134.   Liberty Mutual has been associated with NCCI for decades as a Member, and has had extensive control and influence over NCCI's conduct, operations and decision making, at all times pertinent to this litigation. As a Member of NCCI, and with historical seats on NCCI's Board of Directors and Committees, and the likelihood of future seats on NCCI's Board and Committees, Liberty Mutual has had and continues to have significant influence over NCCI's corporate strategy, planning, and policy, including as that strategy, planning and policy related to Liberty Mutual.

135.   Liberty Mutual has been associated with the association-in-fact enterprise comprising NCCI and Liberty Mutual for decades, and has had extensive control and influence over the enterprise's conduct, operations and decision making, at all times pertinent to this litigation.

136.   Collecting, and processing data related to workers' compensation policy losses and recoveries and reimbursements, and calculating employers' experience modification ratings for use in policy premium calculations, are vital parts of the operations and conduct of NCCI and of the association-in-fact enterprise comprising NCCI and Liberty Mutual. Liberty Mutual has used and corrupted these enterprises to carry out their scheme to defraud.

137.   Liberty Mutual has used NCCI and its rules, processes, and structure to engage in a pattern of racketeering activity in all NCCI States. Upon information and belief, Liberty Mutual's racketeering activity has included of thousands of separate and distinct violations of the

federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

138.    Upon information and belief, at all times material to this Complaint, the regulatory reporting division within Liberty Mutual primarily responsible for submitting data to NCCI was located in the Commonwealth of Massachusetts.  At all material times, NCCI was headquartered in the state of Florida.  Plaintiff Valley and the members of the Classes are located in 35 different states.

139.    For the purpose of executing the scheme alleged herein, Liberty Mutual sent, mailed and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign commerce, including on the Internet and on its website, several materials that facilitated the scheme, including contracts with NCCI, and with members of the Classes, and statistical reports and other data that Liberty Mutual sent to NCCI which Liberty Mutual knew were inaccurate or incomplete.  Liberty Mutual also willfully, intentionally, and in furtherance of the scheme, failed to cause to be sent, mailed, or transmitted, in interstate or foreign commerce, materials that would have jeopardized the scheme to defraud, including proper, timely, and accurate statistical reports and other data.

140.    The materials transmitted by mail or wire by Liberty Mutual in furtherance of the fraudulent scheme contained knowing and intentional misrepresentations or omissions that were intended to deceive.  These materials included:

a.    Contracts between Liberty Mutual and NCCI which falsely stated that Liberty Mutual would comply with the NCCI rules and standards for revising information submitted in connection with class members' losses;

b.      Fraudulent unit statistical reports submitted to NCCI, which purposefully failed to account for recoveries and reimbursements from third parties;

c.      False certifications that Liberty Mutual had correctly and accurately reported all workers' compensation premiums on a state by state and year by year basis;

d.      Documents evidencing receipt of workers' compensation premium payments based upon fraudulently calculated ex-mods; and

e.      Fraudulent and undisclosed agreements within and among subsidiaries or subdivisions of Liberty Mutual to falsely report, mischaracterize, and understate the amount of third-party recoveries received in connection with losses paid to class members.

141.    Liberty Mutual's racketeering activity depended significantly upon their association with, and control of and participation in, NCCI.  Liberty Mutual corrupted NCCI's core function of calculating experience modification ratings for employers.  By using NCCI and its rules, standards, and processes, Liberty Mutual caused employers' experience modification ratings and insurance premiums to be artificially inflated in NCCI States where such employers had operations and workers' compensation policies.  Liberty Mutual further relied upon its association with, and control of and participation in NCCI, to help create and/or perpetuate a workers' compensation reporting and calculation system, used in all NCCI states, which permitted insurers such as Liberty Mutual to operate, with respect to loss and recovery data reporting, with little or no oversight or enforcement.

142.    As part and in furtherance of the scheme to defraud, prior to this litigation, Liberty Mutual was complicit in the perpetuation of a system which notoriously lacked investigations or enforcement of NCCI's rules regarding the submission and accuracy of recovery data relevant to experience modification calculations.  A 2001 investigation of NCCI's

statistical reporting and experience rating procedures by the National Association of Insurance Commissioners, for example, found that NCCI had no procedure in place to ensure that incorrect unit reports were ultimately corrected, NCCI had not enforced the system it ostensibly had in place to ensure timeliness of data reports, and NCCI had no monitoring process in place for periodic review of, *inter* alia, systemic problems with carriers like Liberty Mutual. *See* National Association of Insurance Commissioners, *Multi-State Examination of the National Council on Compensation Insurance, Inc.*, at 56-60 (August 2001).

143.    Liberty Mutual used their position of control over NCCI's affairs to divert NCCI's resources away from investigations and enforcement against insurers like Liberty Mutual, so that Liberty Mutual' fraudulent conduct could proceed without disruption.

144.    Liberty Mutual' racketeering activity has lasted for more than one year, at a minimum.

145.    Because Liberty Mutual conducted the affairs of an enterprise through a pattern of racketeering activity to the injury of Plaintiff and the proposed Classes, Plaintiff seeks federal remedies available under Title 18 U.S.C. § 1964(c), including treble damages and litigation costs, along with compensatory and punitive damages for Liberty Mutual's acts of fraud.

**WHEREFORE**, on behalf of itself and the Classes, Plaintiff prays for relief and judgment as follows:

A.    Certification of the proposed Failure to Reimburse Class, and Failure to Report Class, and appointment of the Plaintiff Valley as a class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    For actual and consequential damages and restitution for Plaintiff and the proposed Classes, in an amount to be determined by the trier of fact;

C.      For exemplary damages, in an amount to be determined by the trier of fact, from Defendants for their intentional, willful, wanton, and reckless disregard for the rights of the Plaintiff and the proposed Classes;

D.      For treble damages pursuant to Title 18 U.S.C. §1964(c);

E.      For prejudgment and post-judgment interest;

F.      For an award to Plaintiff and the members of the proposed Classes of their reasonable costs and expenses incurred in this action, including attorneys' fees and expenses;

G.      For treble damages pursuant to M.G.L. ch. 93A Sec. 1, *et seq.*; and

H.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.

DATED:  October 15, 2019                    The Plaintiff
                                            By its Attorney,


                                            /s/ Christian F. Uehlein
                                            Michael P. Thornton, Esq. (BBO# 497390)
                                            David J. McMorris, Esq. (BBO# 338970)
                                            Christian F. Uehlein, Esq. (BBO# 667325)
                                            Brian J. Freer, Esq. (BBO# 683030)
                                            THORNTON LAW FIRM LLP
                                            One Lincoln Street
                                            Boston, MA 02111
                                            (617) 720-1333   FAX (617) 620-2445
                                            cuehlein@tenlaw.com