## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Valley Container Company, Inc., Individually
And On Behalf Of All Others Similarly
Situated,

               Plaintiff,

    v.

Liberty Mutual Group, Inc.; Liberty Mutual
Insurance Company; Liberty Mutual Fire
Insurance Co,; Liberty Insurance Corporation;
LM Insurance Corporation; The First Liberty
Insurance Corporation; Liberty County Mutual
Insurance Company; Wausau General
Insurance Company; Wausau Underwriters
Insurance Company; Employers Insurance
Company of Wausau; Peerless Insurance
Company; collectively d/b/a Liberty Mutual
Insurance,

           Defendants.

---

**FIRST AMENDED CLASS ACTION
COMPLAINT**

(JURY TRIAL DEMAND)

Civil Case No. 1:19-CV-12133-DJC

---

## FIRST AMENDED CLASS ACTION COMPLAINT

    Plaintiff, through undersigned counsel, on behalf of itself and all others similarly situated,

makes the allegations herein regarding the Plaintiff on personal knowledge, and on investigation

and on information and belief regarding all other allegations.

## INTRODUCTION

    1.    Defendants Liberty Mutual Group, Inc.,  and its associated Defendant "stock

companies," Liberty Mutual Insurance Company,  Liberty Mutual Fire Insurance Company,

Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance

Corporation, Liberty County Mutual Insurance Company, Wausau General Insurance Company,

Wausau Underwriters Insurance Company, Employers Insurance Company of Wausau, and

Peerless Insurance Company, all of which do business collectively as "Liberty Mutual Insurance" and/or "Liberty Mutual" (and are collectively referred to as such herein), have systematically, willfully, and unlawfully overcharged companies in at least 35 states and the District of Columbia for workers' compensation insurance, and have engaged in misconduct which has caused Liberty Mutual and other workers' compensation insurers in at least 35 states and the District of Columbia to overcharge companies for workers' compensation insurance. Liberty Mutual has purposefully and/or knowingly violated the rules, incorporated by contract and by law, governing workers' compensation insurance in the affected states, directly resulting in excessive insurance premiums being charged to the customers they insure and/or have insured, including the Plaintiff here.  Liberty Mutual has methodically taken advantage of their participation in, and relationship with, the National Council on Compensation Insurance ("NCCI"), the organization charged with issuing and enforcing the rules that govern workers' compensation in the 35 affected states and the District of Columbia, in furtherance of their scheme to defraud employers and obtain and retain greater premium amounts than the insureds should be paying.

2.       Specifically, as described herein, Liberty Mutual has used and continues to use NCCI, its relationship with NCCI, and NCCI's knowing and complicit lack of oversight and diligence to help facilitate reporting deficiencies and the corresponding use of inaccurate data in calculating insurance premiums for insureds.  Liberty Mutual improperly benefits not only from its reporting deficiencies and inaccurate data, but from the reporting deficiencies and inaccurate data reported by other insurers as well, who likewise use NCCI in the same manner.

3.       By law, contract and pursuant to NCCI rules, when Liberty Mutual has received reimbursements from third parties for insurance payments expended on behalf of insureds, they

were required to report such recoveries to NCCI through unit statistical reports, revised unit statistical reports, and to do so with accurate and proper information, including accurate net incurred losses, so that the employers insureds would not be penalized with higher premiums for insurance losses that were not, in fact, actually borne by Liberty Mutual (i.e., that were not actually insurance losses on the policy).  Instead, Liberty Mutual, for years and continuing to this day, has systematically failed to properly and accurately report recovery and reimbursement information, including accurate net incurred loss information, thus denying the Plaintiff and all others similarly situated their rightful entitlement to the benefits of reimbursements and recoveries that Liberty Mutual received and improperly burdening such insureds with the negative consequences (i.e., excessive premiums) of improperly reported insurance losses that were not in fact losses on the policies.

4.     As alleged herein, Liberty Mutual has carried out this misconduct by failing to submit accurate data to NCCI subsequent to a recovery, per NCCI's rules. These failures can take multiple, inextricably linked forms, including failing to report and/or timely report to NCCI third-party recoveries and reimbursements it has received and submitting reports and correction reports that have incorrect data, such as reporting excessive net incurred losses on a claim. Both types of failures result in insured employers not receiving the proper benefit of the insurer's receipt of the recovery and the insured employers paying excess premiums to Liberty Mutual and other insurers.

5.     On behalf of itself and all others similarly situated, Plaintiff brings this action alleging Breach of Contract, Unjust Enrichment, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Massachusetts Consumer Protection Act, MGL. Ch. 93A, §1 *et seq*.  The "Class" is defined below.

## PARTIES AND JURISDICTION

6.     Plaintiff Valley Container Inc. ("Valley") is a company incorporated under the laws of and domiciled in the State of Connecticut and with its principal place of business and headquarters located at 850 Union Avenue, Bridgeport, CT.  Valley purchased workers' compensation insurance from Defendants Liberty Mutual Group, Inc., Liberty Mutual Insurance Company, and Liberty Mutual Fire Insurance Company, and their subsidiaries, during years relevant to the conduct at issue in this complaint.

7.     Plaintiff is a business with employees working in the State of Connecticut and is required by law to have in effect at all times a policy of workers' compensation insurance for the benefit of its employees.

8.     Plaintiff brings this action on its own behalf and as representative of the Class, as defined herein.

9.     Defendant Liberty Mutual Group, Inc., is a corporation incorporated under the laws of the Commonwealth of Massachusetts, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint, Liberty Mutual Group, Inc., has promoted itself and its subsidiaries named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. Liberty Mutual Group, Inc., conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

10.     Defendant Liberty Mutual Insurance Company is a corporation incorporated under the laws of the Commonwealth of Massachusetts, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint, Liberty Mutual Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with

superior expertise and profitability.  Liberty Mutual Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

11.     Defendant Liberty Mutual Fire Insurance Company is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint, Liberty Mutual Fire Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Liberty Mutual Fire Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

12.     Defendant Liberty Insurance Corporation is a corporation incorporated under the laws of the State of Illinois, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint, Liberty Insurance Corporation has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Liberty Insurance Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

13.     Defendant LM Insurance Corporation is a corporation incorporated under the laws of the State of Illinois, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint LM Insurance Corporation has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  LM Insurance

Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

14.     Defendant First Liberty Insurance Corporation is a corporation incorporated under the laws of the State of Illinois, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint First Liberty Insurance Corporation has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability. First Liberty Insurance Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

15.     Defendant Liberty County Mutual Insurance Corporation is a corporation incorporated under the laws of the State of Texas, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Liberty County Mutual Insurance Corporation has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Liberty County Mutual Insurance Corporation conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

16.     Defendant Wausau General Insurance Company is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Wausau General Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Wausau General Insurance Company conducts its insurance business as "Liberty

Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

17.     Defendant Wausau Underwriters Insurance Company is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Wausau Underwriters Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Wausau Underwriters Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

18.     Defendant Employers Insurance Company of Wausau is a corporation incorporated under the laws of the State of Wisconsin, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Employers Insurance Company of Wausau has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.  Employers Insurance Company of Wausau conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

19.     Defendant Peerless Insurance Company is a corporation incorporated under the laws of the State of New Hampshire, with its corporate headquarters and principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.  At all times pertinent to this Complaint Peerless Insurance Company has promoted itself and associated companies named as defendants herein as a leader in the insurance industry, with superior expertise and profitability.

Peerless Insurance Company conducts its insurance business as "Liberty Mutual Insurance" or "Liberty Mutual," a collective entity along with other Defendants named herein.

20.     Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company, as well as Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty County Mutual Insurance Company, Wausau General Insurance Company, Wausau Underwriters Insurance Company, Employers Insurance Company of Wausau and Peerless Insurance Company are "stock" insurance companies of Liberty Mutual Group, Inc., also known in the industry as "paper companies."  These companies operate to write insurance under the "Liberty Mutual Insurance" business, marketing, and brand name and operate as a unified insurance company along with Defendant Liberty Mutual Group, Inc.

21.     Liberty Mutual is engaged in the business of workers' compensation insurance in the State of Massachusetts and in most of the other states in the United States, including but not limited to the District of Columbia and the following 35 states at issue in this complaint: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, and West Virginia. Herein, these 35 states, in addition to the District of Columbia, will be referred to collectively as the "NCCI States."

22.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 *et seq.* with a cause of action arising under Federal Law, particularly 18 U.S.C. §1962(c) (*see* Fourth Claim for Relief). This Court has supplemental jurisdiction over Plaintiff's state law claims arising under 28 U.S.C.

§§1367 and 1338(b), where Plaintiff's state law based claims are interrelated with Plaintiff's Federal Law claims, arise from a common nucleus of facts, and adjudication of Plaintiff's state law claims furthers the interests of judicial economy.

23.     This Court also has jurisdiction over this Complaint pursuant to 28 U.S.C. §1332 *et seq.* Plaintiff Valley is a citizen of the State of Connecticut with its principle place of business in the state of Connecticut.  All Defendants are citizens of the Commonwealth of Massachusetts and have their principle place of business in the Commonwealth of Massachusetts.  The amount in controversy exceeds $5 million.

## COMMON FACTUAL ALLEGATIONS

### I.     The National Council on Compensation Insurance

24.     The National Council on Compensation Insurance ("NCCI") is the largest provider of workers' compensation data, statistics, and research in the United States.  NCCI is a creation and tool of the insurance industry, which serves the function of consolidating and standardizing the details of workers' compensation insurance premium computation.

25.     NCCI currently serves as the sole workers' compensation statistical agent and rating organization for the NCCI States.

26.     As a statistical agent and rating organization, NCCI produces and files rates, loss costs, forms, classifications, rating plans, and other materials that are necessary to write workers' compensation insurance policies.

27.     The following have been identified by NCCI as its "core services":

    a.     Rate and advisory loss cost filings

    b.     Cost analyses of proposed and enacted legislation

    c.     Residual market management

    d.     Production of experience ratings

   e.  Statistical and compliance services

   f.  Maintenance of the workers' compensation infrastructure of

classifications, rules, plans, and forms.

*See* NCCI, About NCCI, available at http://www.ncci.com/documents/About-NCCI-Facts.pdf.

   28.  Among other things, NCCI promulgates rules and standards in connection with

the calculation of "experience ratings," which are discussed in greater detail below.  The NCCI

rules and standards are adopted, either wholesale or substantively so, and applied throughout the

NCCI States, all of which have appointed NCCI and its rules and manuals as their designated

rating agent.  An integral part of calculating experience ratings under NCCI rules and standards

is the accurate reporting of loss and recovery data by insurers like Liberty Mutual.  At all

relevant times, NCCI has willfully and complicitly failed to police whether insurers in NCCI

States provide accurate loss and recovery data.  At all relevant times, NCCI has knowingly and

complicitly failed to maintain a meaningful mechanism for enforcing the NCCI rules and

standards governing the reporting of such data and reimbursement.  Rather, NCCI largely or

entirely relies upon the insurers themselves to provide accurate information, even though it

knows the insurers routinely fail to do so to the detriment of the insureds and to the benefit of the

insurers.  This lack of oversight is by design and is a function of the fact that Liberty Mutual and

the other insurers manipulate and control NCCI's decision-making.

   29.  NCCI formally affiliates with companies that are licensed to write or self-insure

workers' compensation in NCCI States.  Companies may elect one of three levels of affiliation:

Partial-States Subscriber, All-States Subscriber, or Member.

   30.  "Member" is the highest level of formal affiliation that NCCI offers to insurers.

In addition to the rights granted to Partial-States Subscribers and All-States Subscribers,

Members have the right to vote on matters submitted to the Members, to participate in NCCI's Board of Directors and Committees, and to participate in the distribution of NCCI's assets.

31.     All entities under common ownership or management must make the same election – either Member or Subscriber.  Each entity's election is made enforceable by contract with NCCI.

32.     NCCI is governed and controlled by its Members and its Board of Directors, which is responsible for establishing corporate strategy and acting as a resource for management on matters of planning and policy.  *See* NCCI, About NCCI, available at http://www.ncci.com/documents/About-NCCI-Facts.pdf.

33.     Members of NCCI share numerous purposes in common, including to position NCCI as the primary rating organization for workers' compensation nationwide and to then exploit NCCI's lack of oversight and diligence in policing insurer reporting for their own (i.e., for the insurers' own) financial benefit and gain and at the expense of insured employers.

34.     Upon information and belief, at all times pertinent to this Complaint, Liberty Mutual has been a Member of NCCI and, as such has been entitled to vote on matters submitted by NCCI to its Members, to participate in NCCI's Board of Directors and Committees, and to participate in the distribution and/or allocation of NCCI's assets.

35.     Upon information and belief, Liberty Mutual is one of the largest and most influential NCCI Members.  As a major provider of workers' compensation insurance, Liberty Mutual has been closely affiliated with NCCI at all relevant times, among other things utilizing NCCI's rates, loss costs, forms, classifications, rating plans, and other materials and services to write workers' compensation insurance policies.

36.     Members and leaders in the insurance industry regularly rotate their executives through NCCI's Board of Directors.  Most recently, in 2017, Tracy A. Ryan, Executive Vice President and Chief Claims Officer for Liberty Mutual Insurance, chaired the Board of Directors of NCCI.  Historically, other Liberty Mutual executives have sat in governance of NCCI, including but not limited to Brian Melas, senior vice president of Commercial Markets for Liberty Mutual Insurance, who sat on the Board of Directors in 2009.

37.     Assigned Risk Pools, sometimes also referred to as residual markets, or markets of last resort, were created by states to provide an insurance option for companies with poor loss history or other statistics that make it difficult or impossible to obtain coverage on the open workers' compensation insurance market.  This enables these companies to meet their insurance requirements under state laws.

38.     Twenty states and the District of Columbia have designated NCCI as the "assigned risk administrator."  They are: Alabama, Alaska, Arizona, Arkansas, Connecticut, District of Columbia, Georgia, Idaho, Illinois, Iowa, Kansas, Nevada, New Hampshire, New Mexico, Oregon, South Carolina, South Dakota, Tennessee, Vermont, Virginia, and West Virginia.  In turn, insurers act as "direct assignment" insurers and offer coverage through this assigned risk pool.  Liberty Mutual is one of the direct assignment insurers in NCCI's assigned risk program.

## II.     Workers' Compensation Premium Calculation

39.     Most states, including all NCCI States, require that employers meet minimum requirements for workers' compensation insurance.

40.     In NCCI States, workers' compensation insurance premiums are calculated on the basis of multiple criteria, including an employer's recent claims experience, called the "workers' compensation experience rating."

41.     Specifically, under NCCI rules, to determine the actual premium that is due for an employer, a "manual premium" is calculated, and then a workers' compensation experience rating and other factors are applied to the "manual premium."

42.     An employer's manual premium is calculated using "manual rates" assigned to employers in a given job classification.  Within each NCCI State, the manual rates are the same state-wide for all policyholders in a given job classification.

43.     Manual rates are calculated using "Loss Cost" factors as determined by the NCCI manuals in NCCI States.  NCCI serves as the workers' compensation statistical agents and rating organizations for businesses in NCCI States.  NCCI calculates premiums using NCCI's published manuals, including the Workers' Compensation Statistical Plan, Part I: Unit Statistical Reporting and the Experience Rating Plan Manual for Workers' Compensation and Employers Liability Insurance.

44.     Under NCCI rules, the manual rate applicable to any given company is adjusted or modified by the company's unique workers' compensation loss history.  This modification is called the "experience modification rating," "experience rating," or "ex-mod."  For NCCI States, the ex-mod for each employer is calculated by NCCI based on the information reported by the insurers via "unit statistical reports" and "correction reports," as discussed further herein.  The manual rate is multiplied by the unique ex-mod (among other factors) to determine an individual employer's premium for workers' compensation insurance.

45.     An employer's ex-mod is a fluctuating number within a range, based on the employer's loss history under prior workers' compensation policies as reported by its insurer pursuant to NCCI's rules. An employer's loss history includes money its insurer paid out for claims under its prior policies adjusted by any money the insurer recovered from third parties,

including subrogation recoveries and recoveries from special funds. An employer with a relatively good loss history (fewer or smaller claims than expected) will have a lower ex-mod, while an employer with a relatively poor loss history (more or larger claims than expected) will have a higher ex-mod.

46.     Thus, the higher an employer's ex-mod, the higher their premiums will be, all else being equal.

47.     An important element of an employer's loss history is the "incurred losses" calculated on any particular claim. Incurred losses are the actual losses realized, including, broadly speaking, medical costs or "losses," indemnity losses, and the reserve amount set on the claim.

48.     Net incurred losses will be reduced on receipt of a subrogation or other recovery and will also be affected by the reserve amount set on the claim.

49.     Reserves are expressly intended to account for *future* payments under Part 4 B-1 and Part 4 C-1 of the NCCI Statistical Plan Manual for medical and indemnity loss amounts.

50.     A closed claim "means that the carrier does not expect to make any further indemnity and/or medical payments on that resolved claim."  *See* NCCI Statistical Plan Manual Part 4 E-1-k-3.  In other words, when an insurer closes a claim, it is improper for there to be any residual reserves following such closure.

51.     According to the governing rules, manuals, and accepted claims adjusting practice, reserves are to be "taken down," or set to zero, by the insurer upon the closure of a claim.

52.     Claims are left open with reserve amounts when the insurer anticipates either future medical or indemnity payments, or while an insurer is pursuing a subrogated claim or

14

other recovery.  In the latter case, it is common for the claim to be closed shortly after receipt of the recovery, as was the case with the claim for Plaintiff Valley.  Upon the claim closure, any reserves that remain on the claim are to be taken down.

### III.   Reporting Failures in the Context of An Insured's Reimbursement and/or Recovery and Their Negative Impact on Insureds in The Form of Excess Premiums.

53.   The ex-mod is designed to adjust an employer's current premium based on prior loss experience.  This adjustment is accomplished by comparing loss information for a particular employer from prior years to average expected losses of similar companies for those same years. The insured's ex-mod is then applied to the manual rate to calculate premiums for the insured in future years.

54.   However, ex-mods are not static, and under certain circumstances an employer's ex-mod may be adjusted based on, *inter alia*, later reimbursements and recoveries that are received by the insurer (i.e., after the loss was incurred by the insurer), including reimbursements or recoveries from third parties responsible for the loss that led to the underlying workers' compensation claim and caused an increase in the ex-mod, or from other sources of recoveries. And, after a reimbursement or recovery has been received by the insurer for a loss, the insurer must adjust the net incurred losses to accurately reflect the state of the claim.  As discussed above, it is common for a claim to be "closed" by the insurer shortly after a recovery.  When the insurer closes the corresponding claim (which has the effect of finalizing the insurer's net incurred loss  on the claim), an appropriate downward adjustment to reserves, to eliminate excess reserves that were not in fact paid by the insurer for the claim, is made (i.e., the reserves are "taken down").  Thus, the net incurred losses should now reflect both the recovery and the elimination of any reserves on a closed claim, and likewise result in an adjustment to the ex-mod (i.e., to reflect the lower actual losses incurred by the insurer on the claim).  The logic of the

above is that an employer's ex-mod is based on the employer's loss history and reimbursements and recoveries from third-party sources reduce, dollar-for-dollar, the insurer's actual losses for that employer. Both adjustments (i.e., to account for the recovery itself and to adjust reserves downward upon receipt of a recovery and closure of the claim) are necessary in order for the insured to properly receive the benefit of the insurer's receipt of the recovery (actual incurred loss dollars are fungible) and for the insured's ex-mod to properly reflect the insurer's actual losses incurred on the claim.

55.     In order for an employer's ex-mod to appropriately reflect reimbursements and recoveries received by the insurer, accurate net incurred loss amounts must be reflected on "unit statistical reports" and any "correction reports" that, pursuant to NCCI rules, must be sent by the insurers to NCCI.

56.     Where an insurer has been reimbursed or recovered losses from responsible third parties or other sources, the NCCI Workers' Compensation Statistical Plan at Part 5-A, No. 1, applicable regulations, and principles of good faith and fair business practice require that the employer's loss history be adjusted to reflect that a reimbursement or recovery has been made. This adjustment, in turn, reduces the amount of loss attributed to an employer, reduces the employer's ex-mod, and ultimately reduces the premiums of that employer, currently and/or retroactively.

57.     The NCCI Statistical Plan Manual 2008 Edition 4 Part A-1-a-1 states at follows:

> "When there has been recovery of loss due to subrogation, the amount of loss reported must be the net incurred loss. The net incurred loss is the gross incurred loss minus the amount recovered less recovery expenses. When the recovery expenses exceed the amount recovered, report the gross incurred loss instead of the net incurred loss. When the allocation of recovery to indemnity and medical is unknown, the net incurred loss must be divided between indemnity and medical losses in the same proportion

as the original gross incurred indemnity and medical amounts. The type of recovery must also be reported."

58.     The NCCI Statistical Plan Manual 2008 Edition Part A-1-a-2 states at follows:

"When a subrogation recovery is received by the carrier subsequent to the 1st unit report, but within one year after the 5th report due date of the report on which the claim appears, correction report(s) must be filed when the net incurred loss is less than the previously reported total incurred loss. Correction reports are required only for prior reports that reflected an amount higher than the net incurred loss. Reduce the indemnity incurred amount and/or medical incurred amount on the claim to the net incurred loss. In addition, reduce the paid cost of the claim to the net paid loss.

If an anticipated recovery becomes known by the carrier, or a recovery is paid to the carrier as of the 6th report due date or subsequent, a correction report is not required; all adjustments are reported at the next valuation date if the claim remains open.

The reporting of correction reports may impact experience modification(s) pursuant to the rules of NCCI's *Experience Rating Plan Manual*."

59.     Likewise, where an insurer receives reimbursement or recovery from a responsible third party or other source, and the insurer subsequently closes the corresponding claims, applicable NCCI rules and accepted practice regarding claims adjustment and reserving, and principles of good faith and fair business practice, require that the insurer take down reserves for the claim and that the employer's loss history be adjusted to reflect such.  This adjustment, in turn, reduces the amount of loss attributed to an employer, reduces the employer's ex-mod, and ultimately reduces the premiums of that employer, currently and/or retroactively.  An insurer's failure to properly take down reserves following the receipt of a recovery and closure of the claim in question results in a failure to properly report the recovery itself, as actual loss amounts reported are inaccurate. The result is that the insured is denied the full benefit of the insurer's receipt of the recovery and pays inflated premiums.

60.     Loss history for a particular employer is reported to NCCI by the insurer in the form of a "unit statistical report."  Net incurred losses, including reimbursements and recoveries,

are reported to NCCI through unit statistical reports, and where the recovery or adjustment occurs after a unit statistical report has been filed, through revised unit statistical reports, also known as "correction reports."  When unit statistical reports do not accurately reflect reimbursements and recoveries or are not revised to reflect such, and reserves are not properly taken down, the information upon which NCCI relies in formulating an employer's unique ex-mod is incorrect, and the resulting premium rates for the employer are artificially inflated, to the insurer's advantage and the employer's detriment.

61.    When an insurer (such as Liberty Mutual) fails to properly file or revise a unit statistical report after being reimbursed for all or a portion of the claim from a responsible third party or another source (to reflect newly calculated net incurred losses), the employer continues to pay an inflated (i.e., excessive) premium and is not reimbursed for past premiums paid, which should be partially reimbursed based on what should be a modified ex-mod and corresponding retroactive reduction in past premiums.  Failure to properly revise unit statistical reports undermines the benefit to employers of NCCI's centralized premium calculation system by paying funds directly into the coffers of the insurers to the detriment of the insured employer.  In other words, the employer's "experience" continues to reflect a loss for which the employer was not responsible or fully responsible (i.e., reflects a higher loss than the insurer actually incurred), and the insurer not only receives the benefit of the third-party recovery (which it is entitled to pursue) but also continues to *improperly* reap the benefit of the excess premium charged to the employer, which should be reimbursed and would be reimbursed but for the insurer's dereliction of it reporting obligations.

62.    Because of the standardized and coordinated manner in which loss and recovery data is reported, and the manner in which ex-mods are calculated by NCCI, a loss incurred in

connection with an employer's policy in one state can affect that employer's premiums not only for the state where the particular loss occurred but also for other states where that employer has operations.  Similarly, a recovery received by an insurer and resulting adjustment in net incurred losses in connection with a claim can affect the premiums paid by the employer in question in states beyond the state in which the loss (and recovery) occurred.

63.    Insurers have several sources of reimbursement and recovery for losses that trigger an obligation to revise unit statistical reports and adjust reserves.  Sources of reimbursement and recovery include, but are not limited to, claims against responsible third parties pursuant to subrogation rights, including recoveries from other insurers, claims on state Second Injury Funds for reimbursement for qualifying injuries, and adjustment of calculated losses for claims found to be fraudulent (e.g., where the insured's employee fraudulently asserts they were injured on the job).

## IV.    **Plaintiff Valley Was One of Many Victims of Liberty Mutual' Reporting Failures in Connection with Reimbursements and Recoveries.**

64.    Defendant Liberty Mutual insured Valley for the policy period 10/20/2012 to 10/19/2013.

65.    On September 4, 2013, an employee of policyholder Valley experienced an industrial injury and subsequently filed a workers' compensation claim.

66.    The claim was accepted by Liberty Mutual and Liberty Mutual paid benefits to the employee.

67.    It was assigned the claim ID 765850230.

68.    Subsequent to these claims, Liberty Mutual received a recovery from a third party.

69.     At its height, the claim's "incurred value," defined as both the medical,
indemnity, and reserve values for a claim, was valued at approximately $50,416.

70.     The claim affected the experience modification worksheets effective 10/20/2014-
15, 10/20/2015-16, and 10/20/2016-17.

71.     According to legal counsel for Liberty Mutual, on May 18, 2015, Liberty Mutual
processed a subrogation recovery in the amount of $21,427.82 that it received in connection with
the above referenced claim.

72.     According to documentation created and provided by Liberty Mutual, on or
around June 24, 2015, following its receipt of the subrogation recovery, Liberty Mutual "closed"
the claim.

73.     On the date the claim closed, Liberty Mutual's documentation reflects an actual
net incurred value on the claim of $120.

74.     On or around June 26, 2015, after the claim was closed, Liberty Mutual filed a
correction report to the first and second unit statistical reports.  The correction reports are
referred to by Liberty Mutual as Corrective Unit Statistical Reports, or "USRs."  However, that
submission included inaccurate and inflated claim information, specifically, the correction
reports over-valued the claim at $28,988, approximately $28,868 more than the $120 net value
amount that should have been reported.

75.     The net result of these inaccurate and artificially inflated correction reports is that
Valley did not receive the benefit of a reduction to its ex-mod consistent with the receipt of the
recovery, and the losses reported to NCCI for the claim far exceeded Liberty Mutual's actual
incurred losses on the claim.  Ultimately, this caused Valley's ex-mods to be inflated and caused
Valley to pay inflated premiums that were based on the affected ex-mods.

76.     Reserves are expressly intended to account for future payments under Part 4 B-1 and Part 4 C-1 of the Statistical Plan Manual for medical and indemnity loss amounts. A closed claim "means that the carrier does not expect to make any further indemnity and/or medical payment on that resolved claim."

77.     The June 26, 2015 submission was dated after the date that the relevant claim was closed.  Because the claim had previously been closed, there would not and should not have been any reserve amount left on the claim.

78.     At the time of the June 26, 2015 submission (that is, after the claim was closed), the net incurred losses could not and should not have been more than approximately $120.

79.     Liberty Mutual's failure to properly correct its prior unit statistical reports deprived Valley of what should have been partial reimbursement of premiums Valley paid during the relevant time period.

80.     Due to Liberty's failure to properly correct their unit statistical reports on  June 26, 2015, the ex-mod for Valley for the period of 10/20/2014-15 was not lowered from 1.44 to 1.40, as it should have been and would have been but for Liberty Mutual's dereliction of its obligations.

81.     Due to Liberty's failure to properly correct their unit statistical reports on June 26, 2015, the ex-mod for Valley for the period of 10/20/2015-16 was not lowered from 0.98 to 0.94, as it should have been and would have been but for Liberty Mutual's dereliction of its obligations.

82.     Liberty Mutual's failure to properly revise the unit statistical reports denied Valley a premium reimbursement of approximately $13,030.00.

83.     To this day Liberty Mutual has not submitted a corrective unit statistical report for the erroneously provided information. However, tellingly, in April of 2016 (and only for the 2016 year) Liberty Mutual submitted a unit statistical report reflecting a net loss of $120.[1]

84.     In fact, nothing substantively changed with the statistical information on the claim between the June 26, 2015 correction report and the April of 2016 report, although these submissions reported drastically different values.

85.     Further, Liberty Mutual's failure to properly revise unit statistical reports resulted in Valley and all other businesses in the same job classification paying a higher manual rate.

86.     Upon information and belief, for years and continuing to this day, Liberty Mutual has pervasively, consistently, and intentionally failed to timely and properly report and/or correct data on recoveries and corresponding net incurred loss amounts for its insureds throughout the NCCI States consistent with applicable NCCI rules and standards, which has resulted in massive amounts of improper, excess premiums being charged to insureds and retained by Liberty Mutual and other workers' compensation insurers.

87.     Specifically, Liberty Mutual has pervasively, knowingly, and intentionally failed in its reporting and correction duties when it has received third-party recoveries and reimbursements, including by failing to properly report and timely report such recoveries and reimbursements and correspondingly failing to report accurate net incurred loss amounts after Liberty Mutual received such recoveries and closed the corresponding claim. This has resulted in damage to its insureds and has unjustly enriched Liberty Mutual itself.  Upon information and belief, the conduct and omissions alleged herein have at all relevant times been systematic at Liberty Mutual, baked into Liberty Mutual's standard operating policies and procedures.

---

[1] For the sake of clarity, this April 2016 submission did *not* prevent Valley from incurring the inflated ex-mods and excess premiums alleged herein.

88.     Upon information and belief, the actions complained about in this complaint, including Liberty Mutual's failure to timely and properly report recoveries and accurate net incurred loss amounts and revise unit statistical reports, have been of an ongoing and continuous nature, commencing with the adoption of the NCCI Statistical Plan in each NCCI State and continuing at least until the date the initial Complaint in this case was filed.[2]

89.     The actions and omissions complained about in this complaint were not reasonably discoverable by Plaintiff and the putative class members who did not have access to information or the same access to information and/or the ability to decipher such information regarding the recovery, claim, and reporting information that Liberty Mutual had access to and which reflect the violations alleged herein.

## V.    Contracts of Insurance with the Class Members

90.     At all times relevant to this Complaint, the Defendants existed and operated as a workers' compensation insurer within the NCCI States.  As part of their privilege to operate within the NCCI States they were subject to the statutory and regulatory laws relevant to workers' compensation and entered into a contract with the Plaintiff and members of the proposed Class, pursuant to which Defendants were bound to adhere to all rules and regulations mandated by state law.

91.     Plaintiff Valley, and other unnamed class members, each purchased workers' compensation insurance policies from Liberty Mutual and its "stock" or "paper" companies.

---

[2] In the initial Complaint filed in this matter, Valley also alleged that Liberty Mutual failed to provide a partial premium reimbursement to Valley that Valley was due under NCCI Rules as a result of an adjustment to Valley's ex-mod (not related to the claim alleged and described above), which information Liberty Mutual received from NCCI.  That allegation was made based on Valley's review of its records and good faith belief that such reimbursement had not been provided by Liberty Mutual. In correspondence dated December 20, 2019, Liberty Mutual's counsel represented that an initial reimbursement was paid to Plaintiff Valley.  In reliance on that representation, Valley is not making a claim herein for this issue, but reserves all rights to amend this complaint as appropriate based on subsequent information obtained.

These policies contained form language that was identical for all purposes relevant to the claims in this case.  The policies contained the following provision:

> All premiums for this policy will be determined by our manuals of rules, rates, rating plans and classifications.  We may change our manuals and apply the changes to this policy if authorized by law or governmental agency regulating this insurance.

> \* \* \*

> The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by the policy.

## VI.   Liberty Mutual and its Property/Casualty Workers' Compensation Insurance Subsidiaries Operate as a Unified Entity

92.    Defendant Liberty Mutual Group, Inc., conducts its property casualty workers' compensation insurance business through a series of "stock" or "paper" companies, and collectively markets this enterprise under the name "Liberty Mutual" and/or "Liberty Mutual Insurance."

93.    Defendants Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company,  Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty County Mutual Insurance Company, Wausau General Insurance Company, Wausau Underwriters Insurance Company, Employers Insurance Company of Wausau and Peerless Insurance Company are "stock" insurance companies of Liberty Mutual Group, Inc., also known in the industry as "paper companies."

94.    The stock companies "write" the individual insurance policies, but in reality, Liberty Mutual and its stock companies operate as one unified enterprise.

95.    Insureds such as Valley are sold an insurance product from "Liberty Mutual," and/or "Liberty Mutual Insurance" and have no direct dealing with or awareness of the stock company that has written their policy.

96.     Upon information and belief, marketing materials, correspondence, accounting and audits all come from "Liberty Mutual."

97.     Upon information and belief, underwriting, claims adjusting and management, audits and regulatory reporting all occur through one central entity.

98.     All of the stock companies operate with a principal place of business at the same location as Liberty Mutual Group, Inc, at 175 Berkeley Street in Boston, Massachusetts.

99.     Accordingly, the wrongdoing and misconduct complained of herein was committed in concert and jointly by Liberty Mutual Group, Inc., and its subsidiary stock companies, operating as one unified insurance company.

## CLASS ACTION ALLEGATIONS

100.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff Valley brings claims, as set forth below, on behalf of itself and as representative of the following "Class":

> All employers that had a workers' compensation claim filed in an NCCI State[3] pursuant to a policy with Liberty Mutual that was effective on or after a date certain, determined by the applicable statute of limitations for the relevant NCCI State, where subsequent to the claim: (a) Liberty Mutual received a third-party recovery or recoveries totaling 10% or more of the gross incurred loss for the claim within one year after the due date for the fifth level unit statistical report for such policy following such claim; and (b) the employer had one or more experience modification ratings effective on or after a date certain determined by the applicable statute of limitations in the relevant NCCI State, which incorporated such claim(s), but: (i) did not account for, or fully account for, Liberty Mutual's recovery for the claim; and/or (ii) following Liberty Mutual's recovery

_____

[3] The "NCCI States" as defined herein include:  Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, and West Virginia

and the closure of the claim, otherwise accounted for net incurred loss information for the claim that exceeded Liberty Mutual's actual net incurred loss on the claim.

101.    The Class is too numerous for joinder to be practicable.  On information and belief, the Class consists of at least thousands of persons and entities.

102.    Plaintiff is a member of the Class as defined, and its claims are typical of the claims of the Class, whose claims, like those of Plaintiff, all arise out of the systematic reporting failures by Defendants described herein.  Plaintiff and the members of the Class were damaged in the same way—i.e., paying inflated premiums and not receiving premium reimbursements that they should have received.

103.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions, insurance fraud, and the insurance rate-making process.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

104.    There are several common questions of law and fact in this case.  Questions of law and fact common to the Class include, but are not limited to the following:

a.    Were Defendants required to timely and accurately report updated claims information to NCCI after receiving reimbursements and recoveries?

b.    Were Defendants required to timely and properly revise unit statistical reports after receiving reimbursements and recoveries?

c.    Are Plaintiff and the members of the proposed Class entitled to damages and/or restitution?

d.    What is the proper methodology for calculating the harm to Plaintiff and the members of the proposed Class?

e.    Are Plaintiff and the members of the proposed Class entitled to injunctive relief to ensure the alleged misconduct does not continue in the future?

f.    Were Defendants unjustly enriched, at the expense of Plaintiff and the members of the proposed Class?

g.    Do NCCI, NCCI member insurers, and Liberty Mutual comprise an association-in-fact enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §1962(c)?

105.   The above-identified common questions predominate over questions, if any, that may affect only individual members of the Class.

106.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Liberty Mutual, no class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the class members will continue to suffer losses and Liberty Mutual's misconduct alleged herein will proceed without an adequate remedy.

107.   Even if class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

108.     As described herein, Defendants have acted or refused to act, and continue to act or refuse to act, on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

109.     Plaintiff repeats and re-alleges the allegation contained in paragraphs 1 to 108 of this Complaint as if fully set forth herein verbatim.

110.     Plaintiff brings this claim on behalf of the Class.

111.     Defendants entered into contracts to provide workers' compensation insurance to Plaintiff and all insureds in the proposed Class in exchange for premiums to be paid by the insureds.

112.     These insurance contracts provided that the premiums paid by the insureds would be "determined by [Defendants'] manuals of rules, rates, rating plans and classifications" and that the "final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by the policy."

113.     Defendants breached their contracts with Plaintiff and all insureds in the proposed Class through their conduct alleged herein, including by failing to timely or properly revise unit statistical reports, and correspondingly failing to timely or properly adjust reserves upon claim closure, after receiving reimbursements and recoveries as provided for in the contracts and required by state law and regulations.

114.     Defendants' contractual breaches alleged herein have resulted in damages to Plaintiff Valley and the other members of the proposed Class, including paying premium amounts to Defendants greater than those owed by the terms of the contracts, paying other

insurers higher premium amounts than they would have paid but for Defendants contractual breaches alleged herein, and losing reimbursements of premium amounts that should have been reimbursed.

115.    Plaintiff Valley and the members of the proposed Class have performed all material conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contracts with the Defendants.

116.    Defendants' breach of the material terms of the contracts has directly and proximately caused actual and consequential damages to the Plaintiff Valley as well as the members of the proposed Class.

## SECOND CLAIM FOR RELIEF

## Unjust Enrichment

117.    Plaintiff repeats and re-alleges the allegation contained in paragraphs 1 to 108 of this Complaint as if fully set forth herein verbatim.

118.    Plaintiff brings this claim on behalf of the Class.  This claim is brought in the alternative to the First Claim for Relief.

119.    Plaintiff Valley and members of the proposed Class have conferred valuable benefits upon Defendants, including through the payment of premiums for workers' compensation insurance pursuant to policies with Defendants.

120.    As alleged herein, Defendants have knowingly and intentionally reported inaccurate information, withheld and failed to timely report accurate unit statistical reports and other information, failed to file timely and accurate correction reports, and failed to timely or properly adjust reserves upon claim closure, after receiving reimbursements and recoveries from third parties for losses incurred on the policies of Plaintiff and the Class.

121.    As a result of the misconduct alleged herein, Defendants have knowingly and unjustly received and retained and failed to pay specific identifiable funds properly belonging to Plaintiff Valley and the members of the Class.

122.    Defendants, through their conduct and omissions alleged herein, have deprived Plaintiff Valley and the members of the Class of monies which are due and owing to them.

123.    Defendants' misconduct alleged herein has unjustly enriched the Defendants in that they are not lawfully entitled to keep the monies due and owed to the Plaintiff and Class. Defendants' unjust enrichment has come at the expense and detriment of Plaintiff and the members of the Class.

124.    Under these circumstances, it would be inequitable and unconscionable for Defendants to retain the amounts for which Defendants have been unjustly enriched and which are due and owing to Plaintiff and the members of the Class.  Justice requires that all such amounts be paid and restored to Plaintiff and the members of the Class.

125.    Plaintiff and members of the Class have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### Violations of M.G.L. Chapter 93A §1 *et seq*.

126.    Plaintiff repeats and re-alleges the allegation contained in paragraphs 1 to 108 of this Complaint as if fully set forth herein verbatim.

127.    Plaintiff brings this claim on behalf of the Class.

128.    At all relevant times hereto Liberty Mutual was engaged in trade or commerce, in particular the business of providing workers' compensation insurance utilizing centralized headquarters and offices in the Commonwealth of Massachusetts.

129.     Upon information and belief, the contracts for insurance at issue in this case (for all NCCI States) were created, adopted, and approved for use in Massachusetts and through conduct at Liberty Mutual's operations in Massachusetts.

130.     Upon information and belief, the conduct, insurance adjusting activities, responsibilities, and failures at issue in this case, including with respect to reporting, misreporting, and failures of reporting of statistical data, and reimbursing of and failures to reimburse premium where due, were created, adopted, developed and executed through conduct at Liberty Mutual's operations in Massachusetts, and were all done pursuant to policies and practices developed, implemented, and overseen by and at Liberty Mutual's operations in Massachusetts.

131.     The Consumer Protection Act forbids unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce.

132.     The acts of the Liberty Mutual as alleged in this complaint constitute unfair and deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 3, 940 C.M.R. 3.05(1), and 940 C.M.R. 3.16(1) and (2).  Further the acts of the Liberty Mutual as described in this Complaint constitute violations of M.G.L. c. 176D pertaining to the practices of insurance businesses in the Commonwealth of Massachusetts, actionable under M.G.L. c. 93A §1 *et seq*.

133.     Defendants' actions and transactions constituting unfair or deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts.

134.     The center of gravity of the circumstances that give rise to Plaintiff's claims and those of the Class occurred and/or originated primarily and substantially within the Commonwealth of Massachusetts.

135.     Defendants' principle place of business is at 175 Berkley Street, Boston, Massachusetts, and Defendants operate other facilities within the Commonwealth of Massachusetts.  Upon information and belief, all or substantially all of the events, policies and practices, responsibilities, conduct, omissions, and failures which give rise to this claim occurred in the Commonwealth of Massachusetts, including but not limited to with respect to reporting and failing to report recoveries and reimbursements, failing to adjust reserves, providing and failing to provide unit statistical reports and correction reports, failing to provide required reimbursements, authorization and drafting of applicable workers' compensation contracts, policies and practices, maintenance of the relationship between NCCI and Liberty Mutual, authorization for any contracts which form the basis of that relationship, agreement, including the subscription agreement, the policies (or lack thereof) and practices which govern Liberty Mutual's practices regarding the reporting of reimbursement, the issuance and non-issuance of checks for reimbursement, and other actions central to the workers' compensation business of Liberty Mutual and related to misconduct and facts alleged herein.   At all times material to this Complaint, the regulatory reporting division within Liberty Mutual primarily responsible for obtaining third-party recoveries and for submitting data to NCCI were located in the Commonwealth of Massachusetts.

136.     Defendants' actions described herein were performed willfully and knowingly.

137.     The conduct of Defendants was malicious, corrupt, and intentional and/or reckless to a degree sufficient to support an award of punitive damages against Defendants.

138.     As a result of the unfair or deceptive acts or practices described above, Plaintiff Valley and the members of the Class sustained injury including but not limited to the injuries detailed above, incorporated herein.

**FOURTH CLAIM FOR RELIEF**

**Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)**

139.    Plaintiff repeats and re-alleges the allegation contained in paragraphs 1 to 108 of this Complaint as if fully set forth herein verbatim.

140.    Plaintiff brings this claim on behalf of the Class.

141.    This claim seeks redress for Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c).

142.    Pursuant to 18 U.S.C. §1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

143.    At all times material to this Complaint, Liberty Mutual were "person[s]" within the meaning of 18 U.S.C. §1962(c).

144.    NCCI is a corporation whose activities affect interstate commerce within the meaning of 18 U.S.C. §1962(c).

145.    An association-in-fact enterprise comprising NCCI, Liberty Mutual, and NCCI's other member-insurers is an enterprise whose activities affect interstate commerce within the meaning of 18 U.S.C. §1962(c).

146.    Liberty Mutual and NCCI's other member-insurers have been associated with NCCI for decades, including but not limited to as "Members," and have had extensive control and influence over NCCI's conduct, operations and decision making, at all times pertinent to this litigation. As Members of NCCI, and with historical seats on NCCI's Board of Directors and Committees, and the likelihood of future seats on NCCI's Board and Committees, Liberty Mutual and NCCI's other member-insurers have had and continue to have significant influence

over NCCI's corporate strategy, planning, and policy, including as that strategy, planning and policy related to their insurance businesses and practices of the nature alleged herein.

147.   Liberty Mutual has been associated with the association-in-fact enterprise comprising NCCI, Liberty Mutual, and NCCI's other member-insurers for decades, and has had extensive and continuous control and influence over the enterprise's conduct, operations and decision making, at all times pertinent to this litigation.

148.   Collecting, and processing data related to workers' compensation policy losses and recoveries and reimbursements, and calculating employers' experience modification ratings for use in policy premium calculations which aid in the collection and retention of inflated premiums, are vital parts of the operations and conduct of NCCI and of the association-in-fact enterprise comprising NCCI, Liberty Mutual, and NCCI's other member-insurers.  Liberty Mutual has used and corrupted these enterprises to carry out their scheme to defraud.

149.   Liberty Mutual has used NCCI and its rules, processes, and structure to engage in a pattern of racketeering activity in all NCCI States.  Upon information and belief, Liberty Mutual's racketeering activity has included of thousands of separate and distinct violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

150.   Upon information and belief, at all times material to this Complaint, the regulatory reporting division within Liberty Mutual primarily responsible for submitting data to NCCI was located in the Commonwealth of Massachusetts.  At all material times, NCCI was headquartered in the state of Florida.  Plaintiff Valley, the members of the Class, and NCCI's other member-insurers are located in 35 different states, in addition to the District of Columbia.

151.     For the purpose of executing, concealing, and furthering the scheme alleged herein, Liberty Mutual continuously sent, mailed and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign commerce, including on the Internet and on its website, several materials that facilitated the scheme, including contracts with NCCI, and with members of the Class, and statistical reports and other data that Liberty Mutual sent to NCCI which Liberty Mutual knew were inaccurate or incomplete.  Liberty Mutual also willfully, intentionally, and in furtherance of the scheme, failed to cause to be sent, mailed, or transmitted, in interstate or foreign commerce, materials that would have jeopardized the scheme to defraud, including proper, timely, and accurate statistical reports and other data notwithstanding their duty or duties to do so.

152.     These materials transmitted by mail or wire by Liberty Mutual in furtherance of the fraudulent scheme contained knowing and intentional material misrepresentations (or omissions of information which they had a duty or duties to disclose) were intended to deceive Plaintiff Valley and Class members and deprive them of property and did deceive Plaintiff Valley and Class members who reasonably relied upon them.  They included:

a.     Contracts between Liberty Mutual and NCCI which falsely stated that Liberty Mutual would comply with the NCCI rules and standards for revising information submitted in connection with class members' losses;

b.     Fraudulent unit statistical reports submitted to NCCI, which purposefully and knowingly failed to account for and/or reflect recoveries and reimbursements from third parties and accurate net loss information after closure of a claim, following a recovery, and included other inaccurate statistical data as alleged herein;

      c.      False certifications to Plaintiff Valley and the proposed Class that Liberty Mutual had correctly and accurately reported all workers' compensation premiums on a state by state and year by year basis in regular correspondence, rate schedules, reports, statements, agreements, promotional materials, and other documents that Liberty Mutual sent to Plaintiff Valley and the proposed Class;

      d.      Documents evidencing receipt of workers' compensation premium payments based upon fraudulently and incorrectly calculated ex-mods; and

      e.      Fraudulent and undisclosed agreements within and among subsidiaries or subdivisions of Liberty Mutual to falsely report, mischaracterize, understate the amount of, and fail to correct or later report third-party recoveries, properly adjust reserves, and report accurate net loss information as alleged herein.

153.    The conduct described in the preceding paragraphs also demonstrates that Liberty Mutual aided and abetted in the knowing transmission of materially false materials by mail or wire in furtherance of the fraudulent scheme by knowingly circulating materially deceptive information (or omissions where it had a duty or duties to disclose the information) in a manner which furthered and/or concealed the fraud with intent to facilitate its continuation or expansion.

154.    Liberty Mutual's racketeering activity depended significantly upon their association with, and control of and participation in, NCCI.  Liberty Mutual corrupted NCCI's core function of calculating experience modification ratings for employers.  By using NCCI and its rules, standards, and processes, Liberty Mutual caused employers' experience modification ratings and insurance premiums to be artificially inflated in NCCI States where such employers had operations and workers' compensation policies.  Liberty Mutual further relied upon its association with, and control of and participation in NCCI, to help create and/or perpetuate a

workers' compensation reporting and calculation system, used in all NCCI states, which permitted insurers such as Liberty Mutual to operate, with respect to loss and recovery data reporting, with little or no oversight or enforcement, which Liberty Mutual in turn exploited as alleged herein.

155.    As part and in furtherance of the scheme to defraud, prior to this litigation, Liberty Mutual was complicit in the perpetuation of a system which notoriously lacked investigations or enforcement of NCCI's rules regarding the submission and accuracy of data relevant to experience modification calculations.  A 2001 investigation of NCCI's statistical reporting and experience rating procedures by the National Association of Insurance Commissioners, for example, found that NCCI had no procedure in place to ensure that incorrect unit reports were ultimately corrected, NCCI had not enforced the system it ostensibly had in place to ensure timeliness of data reports, and NCCI had no monitoring process in place for periodic review of, *inter* alia, systemic problems with carriers like Liberty Mutual.  *See* National Association of Insurance Commissioners, *Multi-State Examination of the National Council on Compensation Insurance, Inc.*, at 56-60 (August 2001).  Upon information and belief, Liberty Mutual was aware of this report, and it was certainly aware of the gross deficiencies that were reported therein.

156.    Liberty Mutual used their position of control over NCCI's affairs to divert NCCI's resources away from investigations and enforcement against insurers like Liberty Mutual, so that Liberty Mutual' fraudulent conduct could proceed without disruption.

157.    Liberty Mutual' racketeering activity has lasted for more than one year, at a minimum.

158.    The activities of the enterprise in violation of 18 U.S.C. § 1964(c), and Liberty Mutual's acts of racketeering, directly, actually, and proximately caused financial harm to Plaintiff and the proposed Class in the form of excessive insurance premiums and lost reimbursements for portions of premiums that should have been reimbursed.

159.    Because Liberty Mutual conducted the affairs of an enterprise through a pattern of racketeering activity to the injury of Plaintiff and the proposed Class, Plaintiff seeks federal remedies available under Title 18 U.S.C. § 1964(c), including treble damages and litigation costs, along with compensatory and punitive damages for Liberty Mutual's acts of fraud.

**WHEREFORE**, on behalf of itself and the Class, Plaintiff prays for relief and judgment as follows:

A.    Certification of the proposed Class under Rule 23 of the Federal Rules of Civil Procedure;

B.    For actual and consequential damages and restitution for Plaintiff and the proposed Class, in an amount to be determined by the trier of fact;

C.    For exemplary damages, in an amount to be determined by the trier of fact, from Defendants for their intentional, willful, wanton, and reckless disregard for the rights of the Plaintiff and the proposed Class;

D.    For treble damages pursuant to Title 18 U.S.C. §1964(c);

E.    For prejudgment and post-judgment interest;

F.    For an award to Plaintiff and the members of the proposed Class of their reasonable costs and expenses incurred in this action, including attorneys' fees and expenses;

G.    For treble damages pursuant to M.G.L. c. 93A § 1, *et seq*.; and

H.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.


DATED: January 31, 2020

The Plaintiff,
By its Attorney,


  /s/ Christian F. Uehlein
Michael P. Thornton, Esq. (BBO #497390)
David J. McMorris, Esq. (BBO #338970)
Christian F. Uehlein, Esq. (BBO #667325)
Brian J. Freer, Esq. (BBO #683030)
THORNTON LAW FIRM LLP
One Lincoln Street
Boston, MA 02111
(617) 720-1333
(617) 720-2445 (fax)
mthornton@tenlaw.com
dmcmorris@tenlaw.com
cuehlein@tenlaw.com
bfreer@tenlaw.com