# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| ) | |
| ) | |
| **VALLEY CONTAINER COMPANY, INC.,** ) | |
| **individually and on behalf of all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 19-cv-12133-DJC** |
| ) | |
| **LIBERTY MUTUAL GROUP, INC., et al.,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                           **June 17, 2020**

## I.      Introduction

Plaintiff Valley Container Company, Inc. ("Valley") has filed this lawsuit, on behalf of itself and others similarly situated, against Liberty Mutual Group, Inc. ("Liberty Mutual"), Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Co., Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty County Mutual Insurance Corporation, Wausau General Insurance Corporation, Wausau Underwriters Insurance Company, Employers Insurance Company of Wausau and Peerless Insurance Company (collectively, "Defendants") alleging breach of contract (Count I), unjust enrichment (Count II), violations of the Massachusetts consumer protection laws under Mass. Gen. L. c. 93A ("Chapter 93A") (Count III) and violations of the Federal Racketeering Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count IV).  D. 23.  Defendants move to dismiss

all claims.  D. 30.  For the reasons stated below, the Court ALLOWS the motion.  D. 30.

## II.      Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant

to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific

inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal

allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory

legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual

allegations present a "reasonable inference that the defendant is liable for the conduct alleged."

Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint

must provide sufficient factual allegations for the Court to find the claim "plausible on its face."

García-Catalán, 734 F.3d at 103 (citation omitted).

## III.     Factual Background

Unless otherwise indicated, this summary is based on the allegations in the first amended

class action complaint ("Amended Complaint") and documents attached and incorporated thereto,

D. 23, which are presumed to be true for the purposes of resolving the motion to dismiss.

Valley is a Connecticut corporation that purchased worker's compensation insurance from

Liberty Mutual.  D. 23 ¶¶ 6, 64.  Liberty Mutual insured Valley for the policy period October 20,

2012 through October 19, 2013.  D. 23 ¶ 64.  On September 4, 2013, an employee of Valley

experienced a work-related injury and filed a worker's compensation claim (the "Claim").  D. 23

¶ 65.  Liberty Mutual  accepted the Claim and paid the employee benefits under the insurance plan.

D. 23 ¶ 66.  After paying benefits to the employee, Liberty Mutual received a recovery from a third party.  D. 23 ¶ 68.

The National Council on Compensation Insurance ("NCCI") is a provider of worker's compensation data, statistics and research.  D. 23 ¶ 24.  Pursuant to NCCI, insurers are required to report loss history regarding insureds to NCCI in the form of unit statistical reports ("USRs").  D. 23 ¶ 60.  These reports state the insurer's net incurred losses, including reimbursements and recoveries, on worker's compensation claims filed by insured's employees.  D. 23 ¶ 60.  When an insurer receives a reimbursement for recovery of losses from a third party, they are required to revise the USR to reflect the net incurred loss after these recoveries.  See D. 23 ¶ 63.  This data is used to calculate an insured's "experience rating," which is based on an insured's worker's compensation loss history, and is then used to calculate the premiums that an insured will be charged.  See D. 23 ¶¶ 40-45.  A higher experience rating will lead to the calculation of higher premium costs for an insured.  See D. 23 ¶ 59.

The "incurred losses" for a particular claim, which are the actual losses realized, are an important element of an insured's loss history.  D. 23 ¶ 47.  When an insurer reports losses on a USR, they may include reserves, which represent estimates of future payments that the insurer expects to expend.  See D. 23 ¶¶ 47-49.  An insurer will report a claim as "closed" when it does not expect to make any further payments on the claim.  D. 23 ¶ 50.  At such time, the reserves are to be set to zero.  D. 23 ¶ 51.

At its highest, the incurred loss reported by Liberty Mutual on the Claim by Valley's employee was $50,416.  D. 23 ¶ 69.  This total included medical, indemnity and reserve values for the Claim.  D. 23 ¶ 69.  On May 18, 2015, Liberty Mutual processed a subrogation recovery in the amount of $21,427.82 (the "Subrogation").  D. 23 ¶ 71.  Shortly thereafter, on June 24, 2015,

Liberty Mutual closed the Claim.  D. 23 ¶ 72.  On the date the Claim was closed, the actual net incurred loss was $120.  D. 23 ¶ 73.  On or around June 26, 2015, Liberty Mutual filed a correction report to correct two previously filed USRs that reported the net incurred loss of the claim as $28,988.  D.23 ¶ 74.  Valley alleges that the correction report should have reflected a net incurred loss of $120.  D. 23 ¶ 74.  As alleged, based on this inaccurate reporting, Valley's experience rating was negatively affected, leading to Valley incurring higher premium costs.  D. 23 ¶ 75.  Valley alleges that Liberty Mutual's failure to correct the prior USRs accurately deprived Valley of a premium reimbursement totaling approximately $13,030.00.  D. 23 ¶ 82.

Valley alleges that Liberty Mutual consistently has failed to file correction reports that reflect the actual net incurred loss amounts for claims after reimbursements and recoveries.  D. 23 ¶ 86.  Valley further alleges that this practice has led to numerous insureds paying excess premiums.  D. 23 ¶ 86.  As such, Valley seeks to represent a class consisting of insureds in the thirty-five states that have adopted the NCCI and have purchased worker's compensation plans through Liberty Mutual.  D. 23 ¶ 100.

## IV.    Procedural History

Plaintiff initiated this action on October 15, 2019, D. 1, and filed the Amended Complaint on January 31, 2020, D. 23.  Defendants have now moved to dismiss all claims.  D. 30.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 43.

## V.    Discussion

### A.    <u>Breach of Contract</u>

The parties agree that their worker's compensation insurance policy contract (the "Policy Contract") is governed by Connecticut law.  D. 31 at 14 n.8, D. 35 at 2.  Under Connecticut law, "[t]he elements of a breach of contract action are the formation of an agreement, performance by

one party, breach of the agreement by the other party and damages." Chiulli v. Zola, 97 Conn.

App. 699, 707 (2006) (citing Bross v. Hillside Acres, Inc., 92 Conn. App. 773, 780-81 (2005)).

"[C]onstruction of a contract of insurance presents a question of law for the court . . . . It is the

function of the court to construe the provisions of the contract of insurance[.]" Auto Glass Express,

Inc. v. Hanover Ins. Co., 293 Conn. 218, 231 (2009) (quoting Connecticut Ins. Guar. Ass'n. v.

Fontaine, 278 Conn. 779, 784-85 (2006)) (first alteration in original).

Valley's breach of contract claim is based on a provision of the Policy Contract that states

that "[a]ll premiums for this policy will be determined by our manuals of rules, rates, rating plans

and classifications . . . . The final premium will be determined . . . by using the actual, not the

estimated, premium basis and the proper classifications and rates that lawfully apply to the

business and work covered by the policy," which Valley argues incorporates the NCCI Statistical

Plan.  D. 23 ¶ 91; D. 35 at 9.  Valley alleges that Liberty Mutual failed to comply with the NCCI

Statistical Plan and, thus, breached the terms of the worker's compensation insurance contract.

D. 35 at 7.  Liberty Mutual does not dispute that the contract incorporates the rules in the NCCI

Statistical Plan but, rather, argues that the contract language requires that they comply with the

rules of the NCCI Statistical Plan in determining premiums under the Contract Policy and that

reporting that affected the calculation of premiums by other insureds is not covered under the

Policy Contract.  See D. 31 at 19-20.

This case is analogous to Composite Co. v. American Int'l Group, Inc., 988 F. Supp. 2d 61

(D. Mass. 2013), in which another session of this Court (Saylor, C.J.) dismissed a breach of

contract claim relying upon identical contract language.  Composite Co., 988 F. Supp. 2d at 78.  In

Composite, Co., the court focused on the "for this policy" language of the provision in determining

that the "language clearly confines the use of the manuals to the computation of rates for the [policy

5

in which the language appears]." Id.  The Court continued, stating that "[r]eading it to incorporate ongoing reporting and revision requirements as a contractual obligation would be more than simply interpreting the language in plaintiff's favor; it would be rewriting the contract."  Id. at 78.  The same reasoning applies here such that the NCCI Statistical Manual is only incorporated into the provision inasmuch as it affects the calculation of premium costs under the Policy Contract between Liberty Mutual and Valley covering the policy period of October 20, 2012 through October 19, 2013.  See D. 23 ¶ 91 (stating that premiums for "this policy" will be determined by applicable rules and manuals).

Valley argues that the reasoning in Composite, Co. is not applicable because, in that case, the court applied Massachusetts law and the contract at issue here is governed by Connecticut law, which requires by statute that worker's compensation insurers must follow the NCCI Statistical Plan.  D. 35 at 8.  Valley argues that, under Connecticut law, the NCCI Statistical Plan is incorporated into the worker's compensation insurance contract and, therefore, Liberty Mutual's alleged failure to comply with the reporting guidelines in the NCCI Statistical Plan constitutes a breach of contract.  Id.  In Massachusetts, however, there is a similar statute requiring insurers to follow specific rules promulgated by a different organization, the Workers' Compensation Rating and Inspection Bureau.  See M.G.L. c. 152, §§ 52C, 53A.  The reasoning in Composite, Co., therefore, is analogous to the present case such that the provision relied upon by Valley does not contractually obligate Liberty Mutual to comply with ongoing reporting and revision requirements.  See Composite, Co., 988 F. Supp. 2d at 78-79.  As such, while Liberty Mutual is required to comply with specific reporting requirements, Valley cannot enforce these requirements through a breach of contract claim based on reporting that affected premiums calculated outside the policy period by another insurance company.

Even if the contract could be read to require Liberty Mutual to comply with reporting requirements that arose outside of the policy period, Valley has failed to plead that Liberty Mutual failed accurately to file USRs pursuant to the NCCI Statistical Plan.  Liberty Mutual was required to file the first USR regarding the Claim twenty months after the effective date of the policy, valuing the Claim as of eighteen months after the effective date.  See D. 39-1 at 2.  The policy became effective in October 2012, so Liberty Mutual was required to file the first USR in June 2014, valuing the claim as of April 2014.  See D. 23 ¶ 64.  In this first USR, Liberty Mutual valued the claim at $34,215, which Valley does not contest.  See D. 32-4 at 17.  Pursuant to the NCCI Statistical Plan, Liberty Mutual was required to submit a second USR regarding the Claim in June 2015, valuing the claim as of April 2015.  D. 39-1 at 2.  Liberty Mutual valued the claim in the second USR as of April 2015 at $50,416, which Valley also does not dispute.  See D. 32-4 at 23.  In May 2015, Liberty Mutual processed the Subrogation in the amount of $21,427.82, which reduced the value of the Claim.  D. 23 ¶ 71; D. 32-4 at 7.  On June 24, 2015, Liberty Mutual determined that no further payments would be required, closed the Claim and indicated that, as of the closure, the net incurred value on the Claim was $120.  D. 23 ¶¶ 72-73.

The NCCI Statistical Plan requires that insurers file correction reports to correct the losses reported on previously filed USRs where "the net incurred loss is less than the previously reported total incurred loss."  D. 23 ¶ 58.  The net incurred loss following receipt of the Subrogation totaled $28,998.  See D. 23 ¶ 74.  Because this value was lower than the values reported on the first and second USRs, on June 26, 2015, Liberty Mutual filed correction reports that amended the net incurred losses reported on the first and second USRs to reflect this amount.  See id.  Valley argues that the correction reports violated the NCCI Statistical Manual, and thus the Policy Contract, because the correction reports should have amended the net incurred loss to $120, which was the

net incurred value as of the closure of the claim.  D. 23 ¶ 78; D. 35 at 3.  The NCCI Statistical

Plan, however, indicates that correction reports filed following recovery due to subrogation must

report the net incurred loss calculated as "the gross incurred loss minus the amount recovered less

recovery expenses."  D. 32-1 at 3.  Additionally, the NCCI Statistical Plan states that correction

reports "are not permissible" to report "[a]ny change in loss due to development from one report

to the next."  D. 32-3 at 3.  The corrections reports filed by Liberty Mutual complied with the

NCCI Statistical Plan in that they corrected the prior reports to reflect the Subrogation received,

but did not report the loss related to its determination to close the case, which was a development

for which a corrections report was prohibited under the NCCI Statistical Plan.  See id.  Liberty

Mutual was required to report the change in total loss due to their closing of the case on the next

USR, which reflected the April 2016 value.  Liberty Mutual's third USR complied with this

requirement, listing the total loss as $120.  D. 23 ¶ 83; D. 32-4 at 32.  As a result, Valley has failed

to plead any breach of the Policy Contract based on Liberty Mutual's reporting of the Claim.

Accordingly, the Court dismisses Valley's breach of contract claim.

### B.     Unjust Enrichment

Defendants have moved to dismiss Valley's unjust enrichment claim on the basis that

Valley has failed to allege that Liberty Mutual received any benefit from the alleged improper

reporting and the unjust enrichment claim improperly relies on the worker's compensation

insurance contract.  See D. 31 at 21.  Under Connecticut law, "[p]laintiffs seeking recovery for

unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants

unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the

plaintiffs' detriment."  Local 84, Theatrical Stage Employees, Moving Picture Technicians, Artists

& Allied Crafts v. Francis, 138 Conn. App. 77, 88 (2012) (citing New Hartford v. Connecticut Resources Recovery Auth., 291 Conn. 433, 451-52 (2009)).

Even if Liberty Mutual's reporting was improper, Plaintiffs have failed to allege that Liberty Mutual received a benefit as a result of the purportedly improper reporting of the Claim. The policy Valley purchased from Liberty Mutual covered only one year, ending in October 2013, D. 23 ¶ 64, and Valley alleges that Liberty Mutual improperly reported the incurred losses on the Claim for reporting years 2014-2015, 2015-2016 and 2016-2017, after Valley was no longer covered by the insurance contract with Liberty Mutual. See D. 23 ¶ 70. Any inflated premiums resulting from Liberty Mutual's reporting, therefore, would have inured to the benefit of subsequent insurers and not to Liberty Mutual.

Valley argues that Liberty Mutual improperly benefited from the third-party recoveries received through subrogation and other sources related to the Claim. D. 35 at 18. Even as alleged, however, these recoveries did not result unjustly from Liberty Mutual's reporting of the Claim on the USRs. Rather, as Valley acknowledges, Liberty Mutual, as the insurer, was entitled to seek recovery from third parties in relation to the incident underlying the Claim. See D. 23 ¶ 54; Geriatrics, Inc. v. McGee, 332 Conn. 1, 25 (2019) (stating that, where an unjust enrichment claim is based on a benefit received by a third party rather than from a plaintiff, the plaintiff must show that it "has 'a better legal or equitable right' to the disputed benefit than the Defendant") (quoting 2 Restatement (Third), Restitution and Unjust Enrichment § 48, p. 144 (2011)). Valley cannot claim a right to the subrogation recovery properly received by Liberty Mutual.

Further, these recoveries did not cause the detriment Valley alleges that it suffered, which resulted from the reporting of the Subrogation by Liberty Mutual. Although Liberty Mutual was required to report the effect of the recoveries on the total incurred losses, Liberty Mutual's receipt

of the recoveries related to the Claim did not cause Valley to pay inflated premiums.  In addition to this Court's determination that Liberty Mutual's reporting was proper, having failed to allege a benefit received by Liberty Mutual as a result of the purported improper reporting, Valley's unjust enrichment claim is dismissed.

### C.    RICO

Valley asserts a claim against Liberty Mutual for purported violations of RICO pursuant to 18 U.S.C. § 1962(c).  D. 23 ¶¶ 139-141.  RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  To succeed in a civil RICO action, plaintiffs must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co. Inc., 473 U.S. 479, 496 (1985) (citations omitted).  Valley must allege each of these elements to state a claim.

Valley's RICO claim is based upon allegations of wire and mail fraud, see D. 23 ¶ 151, which requires Valley to allege "with particularity:  1) a scheme to defraud by means of false pretenses, 2) the defendant's knowing and willful participation in the scheme with the intent to defraud, and 3) the use of interstate wire communications [or interstate mail] in furtherance of a fraudulent scheme."  Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 80 (D. Mass. 1998).  RICO pleadings of mail and wire fraud must satisfy the particularity requirements of Rule 9(b).  Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006).  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); see New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987).  Valley's allegations do not meet this exacting standard.

Valley alleges that "Liberty Mutual continuously sent, mailed and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign commerce, including on the Internet and on its website, several materials that facilitated the scheme, including contracts with NCCI, and with members of the Class, and statistical reports and other data that Liberty Mutual sent to NCCI which Liberty Mutual knew were inaccurate or incomplete." D. 23 ¶ 151. These allegations do not satisfy rule 9(b)'s particularity requirement in that they do not state the time, place or manner of the "multiple related acts" of alleged racketeering activities. Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991) (affirming dismissal of a mail and wire fraud RICO claim where the plaintiff failed to provide details "as to when the communications occurred, where they took place, or what they contained"); Laverty v. Massad, No. 08-cv-40126-FDS, 2009 WL 10730424, at *7 (D. Mass. June 23, 2009) (dismissing RICO claims where the plaintiff did not describe "any actual racketeering activity" that the defendants engaged in). The only transmission alleged with any particularity by Valley is the June 26, 2015 correction report that Valley alleges Liberty Mutual filed with inaccurate information. See D. 23 ¶ 74. In addition to this Court determining that the correction report was not improper, this allegation falls short of establishing a RICO claim.

Even assuming this single communication could support an allegation of mail or wire fraud by Liberty Mutual, Valley does not allege the requisite pattern. To satisfy RICO's pattern requirement Valley must allege "at least two acts of racketeering activity . . . [occurring] within ten years of each other . . . ." Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005). The pattern element also requires that the two racketeering predicates be "related . . . and amount to or pose a threat of continued criminal activity," known as the "continuity plus relationship" standard. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 229 (1989). Valley's Amended Complaint does

not meet this standard.  As discussed, the only allegation of wire or mail fraud that could arguably meet the particularity requirement is the allegation regarding the inaccurate report submitted by Liberty Mutual in June 2015.  This one incident, however, falls well short of establishing a pattern of racketeering activity.  See Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A., 94 F.3d 721, 731-32 (1st Cir. 1996) (noting that RICO patterns are found "only where the defendant's conduct consists of 'multiple criminal episodes' extending over long periods of time")  (quoting Apparel Art Int'l Inc. v. Jacobson, 967 F.2d 720, 724 (1st Cir. 1992)).  Valley's RICO claim is, therefore, dismissed.

### D.      **Chapter 93A**

Defendants move to dismiss Valley's Chapter 93A claim.  D. 31 at 25.  "Chapter 93A, commonly known as the Massachusetts Consumer Protection Act, is a broad consumer protection statute that provides a private cause of action for a consumer who 'has been injured,' by 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'"  Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017) (quoting Mass. Gen. L. c. 93A §§ 9(1), 2(a)) (internal citations omitted); see Casavant v. Norwegian Cruise Line, Ltd., 460 Mass. 500, 503 (2011).

"[A] practice or act will be unfair under [Chapter 93A] if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.'"  Incase v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457 (2004)).  "Which acts will be considered 'deceptive' is less clearly defined in the case law . . . [but] [s]ome cases have held that an act or practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she

otherwise would have acted.'" Id. (quoting Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980)).  Valley has failed to plead a Chapter 93A claim.

Liberty Mutual argues that Valley's Chapter 93A claim must be plead with particularity because the claim sounds in fraud and Valley has failed to meet the particularity standard applicable to fraud claims.  D. 31 at 23.  Valley counters that the particularity requirement does not apply to its Chapter 93A claim because the claim is not grounded in fraud, but rather, is "grounded in Liberty [Mutual's] unfair business practices relating to its widespread and systemic reporting failures following its receipt of third-party recoveries."  D. 35 at 25.  The allegations supporting Valley's Chapter 93A claim, however, are substantially similar to those supporting Valley's RICO claim, which is framed as a fraud-based claim.  See  D. 23 ¶¶ 148-51.  This Court is unable to substantially differentiate the allegations underlying the RICO claim from those Valley relies upon in support of the Chapter 93A claim.  Valley's wire and mail fraud claim under RICO relies upon the same allegations of improper reporting following the receipt of recoveries that support the Chapter 93A claim, framing these actions as a "scheme to defraud."  See id.  As such, Valley's Chapter 93A claim is subject to the particularity requirements of Rule 9(b).  Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017) (affirming dismissal of a Chapter 93A claim based on allegations of fraud that failed to comply with the Rule 9(b) pleading standard).  For the reasons discussed above applicable to Valley's RICO claim, Valley's Chapter 93A claim fails to meet the particularity standard for a claim based on fraud.

To the extent that Valley's 93A claim is based upon Liberty Mutual's alleged breach of the Policy Contract, this is also insufficient.  As discussed above, Valley has failed to adequately plead that Liberty Mutual's reporting violated the NCCI Statistical Plan and, therefore, the Policy Contract.  Further, "[a] simple, or even intentional, breach [of contract] is insufficient in itself to

constitute an unfair or deceptive trade practice under Chapter 93A."  WLC Commercial Prop. Servs., Inc. v. Wal-Mart Stores, Inc., No. 17-cv-12270-FDS, 2018 WL 1083735, at *4 (D. Mass. Feb. 27, 2018) (quoting City of Revere v. Boston/Logan Airport Assocs., LLC, 416 F. Supp. 2d 200, 208-09 (D. Mass. 2005) (second alteration in original).  "In order to rise to the level of a Chapter 93A violation, 'the breach must be both knowing and intended to secure "unbargained-for benefits" to the detriment of the other party.'"  Id.  In addition to there being no valid contract claim here, Valley has not plead any unbargained-for benefits received by Liberty Mutual as a result of their reporting of the Claim.  As a result, Valley's Chapter 93A claim is dismissed. [1]

      **E.**      **Class Claims**

Having granted Defendants' motion to dismiss Valley's underlying claims, it is unnecessary to address Defendants' motion to dismiss the class claims as they are now moot.  See Pershouse v. L.L. Bean, Inc., 368 F. Supp. 3d 185, 192 (D. Mass. 2019).

**VI.**      **Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss.  D. 30.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[1] Valley has named all of the Defendants, but has not plead any action or conduct by any defendant other than Liberty Mutual.  Assuming that all of the allegations as to Liberty Mutual's conduct are the same as against the other Defendants, the motion to dismiss is granted as to all of the Defendants for the reasons stated above.